**O. Howard MUMMAU**

v.

**Michael RANCK and Ronald Buckwalter.**

**Civ. A. No. 80–4811.**

United States District Court, E. D. Pennsylvania.

Jan. 12, 1982.

---

Dona S. Kahn, Philadelphia, Pa., for plaintiff.

Joseph P. Green, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

The critical question currently before the Court is whether an assistant district attorney may claim the haven that *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), provide against being fired for political reasons. This issue was expressly left open by the *Branti* court. *Id.* at 519, n. 13, 100 S.Ct. at 1295 n.13. Defendants, Ronald Buckwalter, now a Judge of the Court of Common Pleas of Lancaster County, Pennsylvania, and Michael Ranck's predecessor in office as the Lancaster County district attorney, argue that as an assistant district attorney, plaintiff possessed a confidential and policymaking position and that his termination for political affiliation was permissible. Defendants, therefore, argue that they are entitled to summary judgment. *See* Fed.R.Civ.P. 56. Plaintiff, countering, asserts generally that as an assistant district attorney he was never entrusted with public policymaking functions and that pursuant to his narrowly defined duties he simply prosecuted juvenile cases. We agree with defendants that plaintiff's employment as an assistant district attorney brought him within the exemption of *Elrod* and *Branti's* prohibition against firing for political reasons and grant defendants' motion.

Our inquiry is guided by the Supreme Court's instruction that "policymakers" and "confidential" employees may permissibly be terminated without offending the aegis of the First Amendment. Whether a particular employee's position brings him within the ambit of those labels focuses upon "whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel*, 445 U.S. at 518, 100 S.Ct. at 1294. Rather than affixing labels to jobs, courts pursue a "functional analysis" of the individual's position with an eye to determining whether it is likely that party affiliation could cause plaintiff, a public official, to be ineffective in carrying out his duties and responsibilities. *Ness v. Marshall*, 660 F.2d 517 at 520 (3d Cir. 1981).

The duties of an assistant district attorney in Pennsylvania are consonant with those of the district attorney. *Maginnis v. Schlottman*, 76 Pa.Super. 124, *aff'd* 271 Pa. 305, 114 A. 782 (1921). Moreover, where a district attorney and the first assistant are absent or incapacitated "any or

all" of their duties may be performed by a designated assistant. 16 Pa.Stat.Ann. § 1421 (Purdon). Those duties are delineated at 16 Pa.Stat.Ann. § 1402(a) (Purdon):

The district attorney shall sign all bills of indictment and conduct in court all criminal and other prosecutions, in the name of the Commonwealth, or, when the Commonwealth is a party, which arise in the county for which he is elected, and perform all the duties which, prior to May 3, 1850, were performed by deputy attorneys general. The duties herein conferred shall be in addition to all other duties given to the said district attorney by other statutes.

They include the "power—and the duty—to represent the Commonwealth's interests in the enforcement of its criminal laws," *Commonwealth ex rel. Spector v. Bauer*, 437 Pa. 37, 41, 261 A.2d 573 (1970). The district attorney must be allowed to carry out this "important function without hinderance from any source." *Id.* at 43, 261 A.2d 573. Moreover, the allocation of scarce resources and the decision to prosecute a particular individual and specific classes of crime requires the reasoned and informed exercise of discretion which is normally entrusted to a prosecutor. *United States v. Berrigan*, 482 F.2d 171 (3d Cir. 1973).

Plaintiff, however, argues that he never possessed the broad powers outlined above. In fact, in his affidavit he attests to the fact that his case assignment consisted solely of prosecuting juveniles, that he never set policy and was involved neither in any discussions regarding the classes of cases which should be prosecuted nor the types of sentences which the office should seek. Plaintiff further states that he never supervised any other employees and that he did not even have his own secretary.

Plaintiff's attempt to narrowly define his employment function so as to exclude any policymaking/confidential position fails since the relevant inquiry focuses on the function of the "public office" involved, *Branti v. Finkel*, 445 U.S. at 518, 100 S.Ct. at 1294, not the function of the particular employee occupying the office.

As the Third Circuit recently noted, the allegation that "plaintiff's role in his public office may in fact have been highly constricted does not affect [the court's] conclusion." So long as applicable statutes, regulations and case law "contemplate" that the public officer "might" be relied upon to render legal advice implementing policy, the official is not protected by *Elrod* and *Branti. Ness v. Marshall*, 660 F.2d at 522. The reasons for this are clear: future office holders, here district attorneys, may well choose to allocate office assignments in a manner inconsistent with their predecessors. They should not be bound by the restrictive functions and office assignments which antedate their tenure. Restricting a district attorney's ability to fire only those who actually performed policymaking functions would permit an outgoing district attorney to apparently dissect various office functions and exclude favored assistants from participating in "policymaking" assignments. By so doing, he could immunize those assistants from being fired and thereby "force" his old staff on the incoming district attorney. The "holdover" staff would, perhaps, retain their primary loyalty for the former boss. This would place the new district attorney in the untenable position of assigning sensitive policymaking roles to assistants in whom he does not repose sufficient trust and who do not share his desire to see his policies succeed. The law does not demand such an unjust and illogical result.

Defendants also move for summary judgment on plaintiff's claim under 42 U.S.C. § 1985(3). That section requires that plaintiff allege some "racial or perhaps otherwise class-based, invidiously discriminatory animus behind the co-conspirator's action." *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971). Plaintiff has failed to do so and has failed to articulate any facts to support a class-based animus claim. Hence, we grant defendants' motion as to all § 1985(3) claims.

Finally, defendants request that we dismiss plaintiff's pendent claim based

upon asserted tortious interference with contractual rights. In determining the proper scope of pendent jurisdiction we must first consider whether the two claims arise out of a common nucleus of operative facts. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). In the case at bar, the two claims do not. The federal claim asserts that plaintiff was fired from his *public* office due to his political party registration and because he sought election as a Judge to the Court of Common Pleas of Lancaster County. The state claim charges that defendants, in retaliation for plaintiff's decision to seek elected office, tortiously interfered with his *private* employment by having his partner violate an existing partnership agreement.

Adjudication of the two claims involves different facts, different issues and different witnesses. The state claim revolves around the existence of a partnership agreement between plaintiff and his partner, defendants' conduct to vitiate it and proof that impermissible conduct by defendants caused the asserted breach. The federal claim, on the other hand, centers on plaintiff's position as an assistant district attorney and is tested against the *Elrod* and *Branti* standard which considers defendants' motive for firing plaintiff. Hence, in the exercise of our "broad discretionary powers", *Lentino v. Fringe Employee Plans, Inc.*, 611 F.2d 474, 478, (3d Cir. 1979), we determine that judicial economy, convenience and fairness will be better served by our declining to exercise jurisdiction over the state claim. *Sparks v. Hershey*, 661 F.2d 30 at 34 (3d Cir. 1981). An appropriate order will issue.