Jeanette L. ZOLD, Plaintiff,

v.

**TOWNSHIP OF MANTUA; Mayor William "Bill" Good; Committeeman Ehrlen Jacoby; and Committeeman John Mayberry, Defendants.**

**Civ. A. No. 89–0020(SSB).**

United States District Court,
D. New Jersey.

May 14, 1990.

Fredric J. Gross, Fredric J. Gross Law Firm, Mount Ephraim, N.J., for plaintiff.

David W. Morgan, Holston, MacDonald & Morgan, Woodbury, N.J., for defendant Tp. of Mantua.

Thomas H. Ward, Albertson, Ward & McCaffrey, Woodbury, N.J., for defendants Good, Jacoby and Mayberry.

## OPINION

BROTMAN, Senior District Judge.

Plaintiff brought this civil rights action against Mantua Township ("Township") and various officials for their failure to reappoint her as Deputy Municipal Clerk ("deputy clerk") of the Township. She alleges that, when the Township Committee changed from a Democratic majority to a Republican majority, it refused to reappoint her because she is active in the Demo-cratic party. Defendants claim that the Township Committee did not reappoint plaintiff because she was not competent in her position as deputy clerk; in the alternative, defendants argue that the position of deputy clerk is a sensitive and confidential position, allowing them to consider political affiliation in appointing or reappointing persons to that position.

Currently before the court is plaintiff's motion for summary judgment and the cross-motions of the individual defendants and the Township for summary judgment. Also pending are plaintiff's "Second Motion *In Limine*" and defendants' motion to quash plaintiff's subpoena. Plaintiff's "first" motion *in limine,* which apparently has never been filed with the Clerk of the Court, requests that this court: (1) limit defendants from arguing that the position of the Mantua Township Deputy Clerk is one for which political affiliation is an appropriate consideration; (2) limit defendants' proofs that plaintiff was replaced because she did not perform her duties adequately; and (3) limit defendants' fact witnesses, expert witness, and exhibits to avoid surprise. Plaintiff's "Second Motion *In Limine,*" which is properly before this court, seeks to bar any claim by the individual defendants that they relied on the advice of counsel in deciding not to reappoint plaintiff as deputy clerk. For the reasons stated herein, this court will grant the motions for summary judgment of defendant Township of Mantua and defendants Good, Jacoby, and Mayberry. Consequently, the court will deny plaintiff's motion for summary judgment. Plaintiff's "first" motion in limine is not properly before this court and, therefore, this court will not consider it. Plaintiff's "second" motion *in limine* and defendants' motion to quash will be denied as moot.

## I. FACTS AND PROCEDURE

Mantua Township is a municipal corporation governed by a Township Committee ("Committee") with five members. During 1988, three of the five members of the Committee were affiliated with the Democratic Party, and defendant Good and one

other member were affiliated with the Republican Party. The balance of power shifted in the November 1988 election; three members of the Committee were Republicans, two were Democrats, effective January 2, 1989.

Plaintiff was hired as Tax Office Clerk for Mantua Township in January 1987. The Township Committee appointed her as the Mantua Township Deputy Clerk in September 1987, and she served in that capacity until December 30, 1988. Plaintiff is a registered Democrat. Since 1981, she has been an elected member of the Mantua Township Democratic Executive Committee and has served as that committee's Secretary and Vice Chairperson.

After the 1988 election, plaintiff maintains that defendant Good told her and a Mantua Township Office Clerk that "I want you both to know that I would try to keep your jobs because things are running very smoothly and I would like to keep it that way," or substantially similar words. Nonetheless, on December 28, 1988, Good sent plaintiff a letter on Mantua Township letterhead informing her:

> Needless to say this is a difficult note for me to write. Your pleasant smile and good humor will be greatly missed.

> I have appreciated the good work and cooperation that you have given me, without any thought as to political affiliation. I'm also extremely sorry that the rest of my party doesn't know you as I feel I do;—then they wouldn't have even thought about replacing you. I feel we need people like you as part of Mantua's working force.

> It has been a real pleasure having you as a friend. Good luck in your future plans.

At the Township reorganization meeting in January 1989, the three individual defendants voted not to reappoint plaintiff as deputy clerk, and instead appointed Shirley Veacock, a Republican.

The parties vigorously dispute the characterization of the position of Deputy Municipal Clerk. Plaintiff characterizes the position as purely ministerial, involving no sensitive or confidential duties. Defen-

dants assert that the deputy clerk, as the highest full-time employee of the Township, has access to sensitive information, thus, political affiliation was an appropriate concern.

Plaintiff brought this action under 42 U.S.C. § 1983 alleging that the Township and its officials violated her constitutional rights under the first and fourteenth amendments to the United States Constitution. Plaintiff asserts that the duties of the deputy clerk were purely ministerial, therefore, the Township's refusal to reappoint her violated her rights to freedom of speech, freedom of association, and freedom of belief.

Defendants assert that plaintiff was not competent as deputy clerk. Defendants state that plaintiff failed to adequately perform even her ministerial tasks. Defendants cite, for example, that she failed to complete dog licenses, delegating the task to others despite her receiving supplemental pay for performing the task; had improperly prepared Committee meeting minutes; handled communications with the general public in an inappropriate manner; was rude in her dealings with individuals contacting the Township; constantly sought help from other Township employees on how to do her job or how to complete a particular task. Defendants assert that plaintiff failed, as Zoning Administrator, to publish notices of zoning decisions as required by the deputy clerk. In one case, the Township received a Notice of Tort Claim threatening suit because the Township allegedly failed to timely file a notice of the Zoning Board's decision.

In the alternative, defendants argue that the position of deputy clerk is a sensitive and confidential position which demands political loyalty to the members of the Township Committee.

## II. DISCUSSION

### A. The Summary Judgment Standard

The standard for granting summary judgment is a stringent one, but it is not insurmountable. A court may grant summary judgment only when the materials of

record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983). In deciding whether there is a disputed issue of material fact the court must view all doubt in favor of the nonmoving party. *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984); *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir.1972). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Recent Supreme Court decisions mandate that "a motion for summary judgment must be granted unless the party opposing the motion can produce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring) (citing *Anderson*, 477 U.S. 242, 106 S.Ct. 2505, and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Moreover, once the moving party has carried its burden of establishing the absence of a genuine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, even if the movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

### B. *Plaintiff's Cause of Action under 42 U.S.C. § 1983*

To maintain an action under 42 U.S.C. § 1983 against the individual defendants,

plaintiff must show (1) that each defendant deprived her of a right secured by the "Constitution and laws of the United States," and (2) that each defendant deprived her of this right "under color of any statute, ordinance, regulation, custom, usage, of any State or Territory." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970). The second element requires that plaintiff show that defendants acted "under color of law." *Id.*

Officials performing discretionary functions are not liable if their conduct does not violate a clearly established constitutional or statutory right of which a reasonable person should have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Additionally, the contours of the right must be sufficiently clear that a reasonable official would understand that what he or she is doing violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Qualified immunity is an affirmative defense that is waived if not pleaded. *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923–24, 64 L.Ed.2d 572 (1980).

To maintain an action under section 1983 against the Township of Mantua, plaintiff must show that the unconstitutional actions of a municipal employee were taken pursuant to municipal policy or custom. *Monell v. Department of Social Services*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Plaintiffs must also establish a "direct causal link" between the unconstitutional municipal policy or custom and the actions of the municipal employee to establish liability. *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989); *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir.1984).

The court turns first to whether the failure to reappoint plaintiff violated her constitutional rights. The United States Supreme Court has held that dismissal of certain public employees solely because of their partisan political affiliation infringes their first amendment rights of belief and

association. *Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 1294–95, 63 L.Ed.2d 574 (1979); *Elrod v. Burns,* 427 U.S. 347, 373 (1975) (plurality).

### C. *Plaintiff's Job Performance*

Defendants claim that failure to reappoint plaintiff resulted from her poor job performance, therefore, they did not dismiss her solely due to her political affiliation. *See Elrod v. Burns,* 427 U.S. 347, 366, 96 S.Ct. 2673, 2686, 49 L.Ed.2d 547 (1975) (plurality) (employees may be discharged for good cause such as insubordination or poor job performance when those bases exist). Plaintiff submits that Bill Good's separation letter to her shows that political affiliation is the sole reason for not reappointing her. Additionally, plaintiff argues that defendants did not consider her qualifications before deciding not to reappoint her; therefore, arguments that she is not qualified are a sham and irrelevant. Defendants counter that Good's parting letter was to let plaintiff down gently and to avoid hampering her later job search.

■■■ The court finds that neither party is entitled to summary judgment on this issue. The moving party has the burden to establish the absence of a genuine issue of material fact. In her motion for summary judgment, plaintiff failed to show that defendants did not consider her qualifications or alleged poor performance in failing to reappoint her. Plaintiff has not shown that defendant Good's separation letter was more than an attempt to soften the blow of her discharge. The letter does not purport to convey the complete deliberations of the Township Committee nor does it speak for the other individual defendants. Plaintiff has not established that her dismissal resulted solely from her political affiliation. Plaintiff has not met her initial burden to show the absence of a genuine issue of material fact. Good's letter merely establishes that a material fact remains in dispute.

Defendants have satisfied their initial burden of establishing that they considered plaintiff's qualifications in deciding not to reappoint her through the deposition testimony of Ehrlen Jacoby. The deposition establishes that defendants Good, Mayberry, and Jacoby discussed plaintiff's capabilities. Jacoby was dissatisfied with plaintiff's performance as planning coordinator because she did not attend meetings as required and did not prepare minutes or agendas on time. His dissatisfaction arose shortly after plaintiff was appointed. While Jacoby's deposition testimony does not establish the date on which the three individual defendants discussed plaintiff's qualifications, it clearly establishes that Jacoby's dissatisfaction with plaintiff's job performance predated the decision not to reappoint her. As such, defendants have met their initial burden to show that they considered job performance in deciding not to reappoint plaintiff.

Plaintiff, therefore, must produce evidence which, when considered in light of her burden of proof at trial, could be the basis for a jury finding in her favor. In opposing defendants' motions for summary judgment, plaintiff established that she did not receive criticism of her job performance until after the Township's decision not to reappoint her. Thelma Good, a Township Office employee, testified that she had never heard complaints about plaintiff's job performance from the public, from the planning board representative, from the chairman of Mantua Township, from anyone in the Code Compliance and Construction Office and that "the office ran pretty smoothly" while plaintiff was there. With the material fact of plaintiff's job performance in dispute, summary judgment on this issue is inappropriate.

### D. *The Position of Deputy Municipal Clerk*

■■■ New Jersey defines the position of Deputy Municipal Clerk:

The governing body of any municipality, by ordinance, may create the office of deputy municipal clerk and provide for appointments thereto, his [or her] compensation, term thereof and the powers, duties and functions of such office. During the absence or disability of the mu-

nicipal clerk, the deputy municipal clerk shall have all the powers of the municipal clerk and shall perform the duties of such office.

N.J.Stat.Ann. § 40A:9–135 (1980).[1]

Defendants argue that the statutory scheme anticipates that the positions of municipal clerk and deputy clerk are subject to consideration of political affiliation in reappointment until the clerks are tenured. N.J.Stat.Ann. § 40A:9–133.7 grants tenure to municipal clerks after five years of service or after three years of service with certification, but the statute does not mention deputy clerks. A tenured clerk "shall not be removed therefrom for political reasons, but only for good cause shown and after a proper hearing before the director or his [or her] designee." *Id.* Defendants argue that, because the statute prohibits political considerations if a clerk has tenure, it clearly contemplates that Township may consider political affiliation in declining to reappoint a clerk without tenure. The parties do not dispute that plaintiff did not have tenure here. In any event, the statute does not speak to deputy clerks and, therefore, is not persuasive authority that the Township may consider political affiliation before the clerk has tenure. The court, therefore, rejects this argument.

The parties vigorously dispute whether the position of deputy clerk is ministerial. The characterization of the position as "ministerial" is critical; the United States Supreme Court has held that dismissal of certain public employees solely because of their partisan political affiliation infringed their first amendment rights of belief and association. *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 1294–95, 63 L.Ed.2d 574 (1979); *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689–90, 49 L.Ed.2d 547 (1975) (plurality). In *Elrod*, the Court held that a new Democratic sheriff could not discharge a bailiff/security guard, a process server, an office employee, or the Chief Deputy of the Process Division solely for failure to affiliate with his political party because to do so would violate the employees' first and fourteenth amendment rights. The Court rejected the government justification that nonaffiliated employees might not work effectively or might, in fact, subvert the incumbent administration's efforts to govern effectively. According to the Court, "the inefficiency resulting from the wholesale replacement of large numbers of public employees belies this justification." *Id.* at 364, 96 S.Ct. at 2685. Additionally, in addressing the government's argument that political loyalty was required to prevent obstructionist tactics, the Court distinguished policymaking from nonpolicymaking positions. *Id.* at 367, 96 S.Ct. at 2686–88. Noting that the line between policymaking and nonpolicymaking was not clear, the Court placed the burden on the government to show, for example, that the employee acted as an adviser or formulated plans for the implementation of broad goals or that the employee had responsibilities that were not well-defined or were of broad scope, which would make the position a policymaking one. *Id.* at 368, 96 S.Ct. at 2687. In a pithy concurring opinion, Justice Stewart refused to condemn patronage dismissals so broadly, but agreed with the majority that a nonpolicymaking, nonconfidential government employee could not be discharged from a job that he or she is satisfactorily performing upon the sole ground

---

**1.** At oral argument, this court requested Township's counsel to provide the ordinance creating the position of Deputy Municipal Clerk, as required by N.J.Stat.Ann. § 40A:9–135. Additionally, the court sought the ordinance that establishes the Municipal Clerk's position as part-time. Counsel submitted the yearly ordinances establishing salaries for the Municipal Clerk and the Deputy Clerk, however, counsel did not submit the original ordinances creating and defining the positions. While it is apparent from the established salaries that the Municipal Clerk's position is part-time and the Deputy Municipal Clerk's position is full-time, counsel has not submitted any Township ordinance that establishes these facts. Additionally, the absence of the creating ordinance prevents this court from reviewing the duties of the deputy clerk as defined by the Township. As a result, the court must rely on the characterizations of plaintiff and the current deputy clerk to ascertain whether the position is ministerial or politically sensitive.

of his or her political beliefs. *Id.* at 375, 96 S.Ct. at 2690–91. (Stewart, J., concurring).

A majority of the Court later clarified its holding in *Elrod* in *Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 1294–95, 63 L.Ed.2d 574 (1979). In *Branti,* the Court stated that the "ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Id.* The Court held that the continued employment of an assistant public defender, despite his access to confidential information arising out of various attorney-client relationships, could not be conditioned upon his allegiance to the political party in control of county government because whatever policymaking he did related to his individual client's needs and not to any partisan political interests. *Id.* at 519, 100 S.Ct. at 1295. Justice Stewart dissented, finding that the assistant public defenders were clearly not "nonconfidential" employees. *Id.* at 521, 100 S.Ct. at 1296. (Stewart, J., dissenting). Justice Powell, in his dissent, noted that courts would now control selection and removal of key governmental personnel through use of a constitutional standard that was both uncertain in its application and impervious to legislative change. *Id.* at 525, 100 S.Ct. at 1298. (Powell, J., dissenting).

The United States Court of Appeals for the Third Circuit, however, refused to extend *Elrod* and *Branti* to encompass the City Solicitor and Assistant City Solicitor of the City of York in *Ness v. Marshall,* 660 F.2d 517, 522–23 (3d Cir.1981). The court found, as a matter of law, that the functions of the Solicitor's position, such as rendering legal opinions, drafting ordinances, and negotiating contracts, defined a position for which party affiliation is an appropriate requirement. *Id.* at 522. The court noted that these functions are so intimately related to city policy that the mayor had the right to receive the complete cooperation and loyalty of a trusted advisor. *Id.* The court specifically rejected plaintiffs' narrow definition of their individual job functions, noting that future mayors might choose to employ solicitors to the full extent allowed by statute. *Id.*

Later, the Third Circuit applied the same reasoning in affirming the district court's dismissal of an action brought by an assistant district attorney in *Mammau v. Ranck,* 531 F.Supp. 402 (E.D.Pa.), *aff'd,* 687 F.2d 9 (3d Cir.1982). The district court noted that plaintiff's attempt to define narrowly his employment function to exclude any policy-making or confidential functions failed because the relevant inquiry focuses on the function of the "public office" involved. 531 F.Supp. at 402. Specifically, the assistant district attorney, if designated, could perform any or all of the duties of the district attorney and the first assistant if both were absent or incapacitated. *Id.* at 405 (citing 16 Pa.Stat.Ann. § 1421 (Purdon)). The duties of the district attorney included "the power—and the duty—to represent the Commonwealth's interests in the enforcement of its criminal laws." *Id.* (quoting *Commonwealth ex rel. Specter v. Bauer,* 437 Pa. 37, 41, 261 A.2d 573 (1970)). The district court found that termination for political affiliation was permissible. *Id.* The Third Circuit agreed. 687 F.2d 9, 10 (3d Cir.1982).

Likewise, the Third Circuit held that an Assistant Director of Public Information of Bucks County could be terminated for political reasons because her job duties required that she write speeches, communicate with legislators, and present the views of the Commissioners to the press and public on a daily basis. *Brown v. Trench,* 787 F.2d 167, 170 (3d Cir.1986). After reviewing the precedents in each circuit, the court noted that the key factor to determining whether a position fell within the protection of *Branti* seemed to be whether the employee has "meaningful input into decision making concerning the nature and scope of a major township program." *Id.* (citing *Nekolny v. Painter,* 653 F.2d 1164, 1170 (7th Cir.1981), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982)). While noting that some of plaintiff's duties were only technical or clerical in nature, the Third Circuit found that "her principal

duty was to act as spokesman for the Commissioners and help promote county projects." *Id.* As such, she could be dismissed because of her political affiliation without any violation of her first amendment rights. *Id.*

Most recently, the Third Circuit created an exception to the rule set forth in *Mammau v. Ranck*, 531 F.Supp. 402 (E.D.Pa.), *aff'd*, 687 F.2d 9, 10 (3d Cir.1982). In *Furlong v. Gudknecht*, 808 F.2d 233, 237 (3d Cir.1986), the Third Circuit held that, notwithstanding the statutory provision by which the Second Deputy Recorder of Deeds could ascend to defendant's elected office of Recorder of Deeds, the possibility of such ascension was *de minimis* and, therefore, was not determinative of whether political affiliation is an appropriate requirement for effective performance of the Second Deputy's position. *Id.* at 237. Additionally, the court held that the duties of the Recorder of Deeds position were not affected by political affiliation,[2] even though political affiliation clearly was essential to election to the position. *Id.* at 236. The court rejected defendant's argument that failure to reappoint plaintiff, rather than dismissal, required a less stringent standard than *Branti* provides. *Id.* at 238. In a vigorous dissent, Judge Becker found that the majority's conclusion that the duties of the Recorder of Deeds were unaffected by political considerations an impermissible substitution of the court's view for the legislative determination that the position should be filled by an election. *Id.* (Becker, J., dissenting). Judge Becker stated that, "because the Recorder of Deeds is elected to the position … there can be no question that party affiliation is important to that office." *Id.* at 239. Additionally, Judge Becker rejected the majority's characterization of the possibility of ascension as *de minimis*, noting that the probability of succession for Furlong was no lower than any other instance of possible succession, effectively discounting all succession possibilities as *de minimis*. *Id.* at 240.

Contrary to plaintiff's characterization, the Third Circuit has taken a very narrow view of the scope of *Branti*. *See Horn v. Kean*, 796 F.2d 668, 678 (3d Cir.1986) (en banc) (plurality) ("we believe that it is a danger for courts, other than the Supreme Court, to expand this particular rule"). In *Horn*, the Third Circuit held that *Branti* does not extend to contractors for the state who serve as motor vehicle agents. *Id.* District courts within the circuit, however, have found that neither a superintendent of roads, *see Abraham v. Pekarski*, 537 F.Supp. 858, 865 (E.D.Pa.1982), *aff'd*, 728 F.2d 167, 175 (3d Cir.), *cert. denied*, 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984), nor a bookkeeper identified as "Second Deputy Clerk" could be dismissed based on political affiliation. *See Mitman v. Glascott*, 557 F.Supp. 429 (E.D.Pa.1983), *aff'd*, 732 F.2d 146 (3d Cir.1984). Additionally, one court held that "housing rehabilitation specialist" was not a confidential or policymaking position even though plaintiff had the authority to determine who received HUD money under HUD guidelines and had power to enforce and to interpret the HUD guidelines. *Domanico v. Maher*, Civil No. 86–1484, 1986 WL 7911 (E.D.Pa. July 15, 1986) (available on LEXIS).

This court now turns to the Deputy Municipal Clerk position in Mantua Township to determine whether the Township "can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel*, 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1979). Plaintiff's affidavit states that her responsibilities as deputy clerk "involved the maintenance of vital statistics records, issuing marriage licenses, dog licenses, and death certificates, ascertaining that planning and zoning applications are in accept-

---

**2.** The Recorder's duties, as defined in Pa.Stat. Ann., tit. 16, §§ 9701–9857 (Purdon 1956 & Supp.1986), included recording of all deeds, mortgages, and conveyances and to index them in an accessible manner. *See Furlong v. Gudknecht*, 808 F.2d 233, 237 (3d Cir.1986). The county commissioners retained oversight responsibility for the Registry Office and possessed veto power over the Recorder's budget proposals. The county commissioners also contracted for services and purchased property for the Registry Office. *Id.*

able form, and searching records of municipal improvement assessments as requested by members of the public." Zold affidavit at ¶ 4. She also states that she did not give confidential advice to any person with decision-making responsibility and that she dealt only with public documents. *Id.* ¶ 5. She has never attended a closed meeting of the Township Committee. *Id.*

Defendant Township asserts that, in light of the statutory mandate that the deputy clerk "shall have all the powers of the municipal clerk and shall perform the functions and duties of such office" during the absence or disability of the municipal clerk, the position is as sensitive as that of the municipal clerk. *See* N.J.Stat.Ann. § 40A:9-135. Notably, the position of municipal clerk in Mantua is a part-time position. Thus, defendants contend, the deputy clerk performs the duties of the municipal clerk on a daily basis.

Defendants point to the materials prepared by Dorothy Carlson, Clerk of the Borough of Stratford, for use by the state of New Jersey in seminars for municipal clerks. The preamble to the paper describes the position of municipal clerk, ergo the deputy clerk, as:

> one of the most important and exacting positions in municipal government. In many instances it is the hub of municipal operations. The clerk, by virtue of his/her position, serves as liason (sic) officer between the governing officials and the taxpayers and between the executive and the general body of municipal personnel. The municipal clerk is an important public relations figure in the municipal organization.

D. Carlson, *The Office of the Clerk*, at 2–2. The municipal clerk is charged with the following statutory duties: (a) act as secretary to the governing body; (b) act as secretary of the municipal corporation; (c) act as an election official with quasi-judicial authority; and (d) act as administrative official on the administrative level. *Id.* at 2–4. In addition to those duties specified by statute or ordinance, the municipal clerk has duties established by custom. *Id.* at 2–5. In particular, the municipal clerk has

the obligation to provide the governing body with the necessary information and background material on those matters requiring its attention. *Id.* The paper notes that the "[s]tatus of the Clerk in the respective community depends upon gaining and maintaining the complete confidence of the governing body, the press, the taxpayer, and the citizen." The municipal clerk's effectiveness, therefore, depends on good public relations. *Id.*

Defendants also offer the affidavit of Shirley Veacock, the current deputy clerk of Mantua Township, who had previously served as deputy clerk from June 1981 to December 1981 and from January 1984 to December 1986. Her affidavit establishes that, pursuant to custom in Mantua Township, the deputy clerk presides at Township Committee meetings in the absence of the municipal clerk, which includes presiding at closed sessions to discuss issues confronting the Township relating to litigation, personnel, and other items permitted at closed sessions. The deputy clerk prepares the agenda for Township meetings in cooperation with the Solicitor and the Mayor. The deputy clerk's responsibilities include preparing marriage licenses, dog licenses, and voter registration. The deputy clerk also reviews, sorts, and directs incoming correspondence and prepares letters on matters relating to the Township. The deputy clerk maintains the general Clerk's account.

As Planning and Zoning Coordinator, the deputy clerk receives payment of all applications, gathers information for applications, prepares all materials for meetings and attends all meetings for the Planning Board. She is responsible for paying invoices for Planning Board professionals. The deputy clerk receives incoming telephone requests and complaints for the Township, receives summons and complaints served on the Township, disseminates information relating to litigation, complaints and directives from government agencies.

After considering these authorities, this court concludes that the Deputy Municipal Clerk position in Mantua Township is a confidential position such that the Town-

ship Committee could properly consider political affiliation in failing to reappoint plaintiff without violating plaintiff's constitutional rights. Although plaintiff describes her former position as "ministerial," this court is not bound by her narrow definition. *Ness v. Marshall,* 660 F.2d 517, 522 (3d Cir.1981). The statute defining the deputy clerk position states "During the absence or disability of the municipal clerk, the deputy municipal clerk shall have all the powers of the municipal clerk and shall perform the duties of such office." N.J. Stat.Ann. § 40A:9–135 (1980). Although succession to the municipal clerk's position is not determinative, *see Furlong v. Gudknecht,* 808 F.2d 233, 237 (3d Cir.1986), this court must consider the possibility of such succession in determining whether political affiliation is an appropriate consideration for the position. In Mantua Township, the probability that the deputy clerk shall serve in the capacity of the municipal is substantial; in fact, because the municipal clerk is a part-time position, the deputy clerk essentially serves as municipal clerk on a daily basis.

The deputy clerk has access to confidential information. Plaintiff states that she never attended a closed session of the Township Committee and, therefore, never had access to confidential information. This court, however, must look at the functions that the deputy clerk *may* perform and not restrict itself to those functions plaintiff, in her experience, has performed. *See Ness v. Marshall,* 660 F.2d 517, 522 (3d Cir.1981); *Battaglia v. Union County Welfare Board,* 88 N.J. 48, 63, 438 A.2d 530 (1981), *cert. denied,* 456 U.S. 965, 102 S.Ct. 2045, 72 L.Ed.2d 490 (1982). The statute clearly contemplates that the deputy clerk may be required to attend the Township Committee meeting on behalf of the municipal clerk. In fact, the past and current deputy clerk, Shirley Veacock, attended closed sessions of the Township Committee in which the Committee discussed appointments and personnel, handling litigation, decisions relating to enactment of ordinances and resolutions, and strategy relating to municipal business in her presence. The probability of deputy clerk's being called on to perform this function is not *de minimis;* the deputy clerk has attended these meetings in the past. In these sessions, the Township Committee discusses sensitive issues, such as pending litigation against the Township, and relies on the input of the deputy clerk to develop Township policy. Clearly, the deputy clerk has access to confidential information through attendance at these meetings.

Additionally, in the absence of the municipal clerk, the deputy clerk adopts the municipal clerk's role as an important public relations figure in the municipal organization. In fact, the deputy clerk is the Township's face to the general public, receiving inquiries and complaints from the electorate and responding in kind. The Third Circuit held that a public employee could be terminated for political reasons because her job duties required that she communicate with legislators and present the views of the Commissioners to the press and public on a daily basis. *Brown v. Trench,* 787 F.2d 167, 170 (3d Cir.1986). This court finds the duties in *Brown* so similar to the duties that the deputy clerk must assume in the probable absence of the Mantua Township municipal clerk that *Brown* is controlling here.

The deputy clerk stands in for the municipal clerk in his or her role as liaison officer between the governing officials and the taxpayers and between the executive and the general body of municipal personnel. The deputy clerk deals with the engineer, the Township auditor, and the Township Solicitor almost on a daily basis. For example, in the past, the deputy clerk has discussed with the auditor what action must be taken to collect mobile home fees that have been uncollected for years. Also, the deputy clerk gathers names of witnesses, documents, and information for discovery and trial of litigated matters. Sitting in closed sessions of the Township Committee, the deputy clerk is privy to information regarding litigation strategy, determinations whether to settle litigation at a certain value or in a specified manner, obligations of the Township, or possible civil or criminal violations or penalties.

Plaintiff cites *Visser v. Magnarelli*, 530 F.Supp. 1165, 1173 (N.D.N.Y.1982) (City Clerk of Syracuse, New York can not be replaced solely for political reasons) and *Paradise v. O'Laughlin*, 621 F.Supp. 694, 698 (W.D.N.Y.1984) (City Clerk of Niagara Falls, New York can not be replaced solely for political reasons) to show that municipal clerks are ministerial employees who may not be discharged solely due to their political affiliation. Job titles, however, are not determinative; rather the functions of the position determine whether that position is one for which political affiliation is an appropriate consideration. In *Visser*, defendants did not contest the narrow technical responsibilities of the City Clerk's job, which included recording the meetings of the City Council, transmitting copies of ordinances to the appropriate city officials, and publish notices as required. The City Clerk prepared the agenda for Council meetings and Board of Estimates meetings and administers issuance of dog, hunting, fishing, and marriage licenses. Notably, defendants did not offer a single apolitical reason for refusing to reappoint plaintiff. The record was replete with references to plaintiff's good work. *Id.* at 1170. The court rejected defendant's contention that a statutory provision by which the City Clerk had to consent to the withdrawal of a city official's resignation, even though the City Clerk could possibly exercise that discretion to allow one party to dominate the City Council, did not render the position one of political clout. *Id.* at 1172. The court noted that, to exercise this power in a meaningful political manner, "a rare confluence of facts must all exist, and in exactly the right order." *Id.* The court found that "the largely theoretical power ... pales beside the mass of routine, strictly ministerial duties of the City Clerk" described by statute. *Id.*

Likewise, in *Paradise v. O'Laughlin*, 621 F.Supp. 694, 698 (W.D.N.Y.1984), defendants offered no evidence to show that party affiliation was an important requirement for the effective performance of the

City Clerk's position. *Id.* at 696. The court found that the City Clerk's duties described in the City Charter were ministerial. Both cases are distinguishable from the instant case. Specifically, neither case indicates that the City Clerk's position was the highest level full-time position in the city. Neither case shows that the City Clerk participated in closed-door sessions of the Township Committee in which confidential discussions were held. In fact, the *Visser* court noted that the City Clerk did not participate at all in council discussions; rather, the City Clerk merely recorded the proceedings without providing input. *Visser*, 530 F.Supp. at 1173. Defendants here have demonstrated that party affiliation is an appropriate requirement for the effective performance of the public office involved. Defendants have shown that, in addition to ministerial duties, the deputy clerk has access to confidential information and speaks for the Township Committee with the press and the public. That clerks in other cities who did not perform these confidential functions could not be removed solely for political reasons is not persuasive here.

This court concludes that the Deputy Municipal Clerk position in Mantua Township is a confidential position such that the Township Committee could properly consider political affiliation in failing to reappoint plaintiff without violating plaintiff's constitutional rights. Because the failure to reappoint plaintiff did not violate her constitutional rights, plaintiff has no cause of action under 42 U.S.C. § 1983 and the defendants' motions for summary judgment must be granted.

III. CONCLUSION

This court will grant the motions for summary judgment of the Township of Mantua and of defendants Good, Jacoby, and Mayberry. The court will deny plaintiff's motion for summary judgment. Plaintiff's first motion in limine is not properly before this court and, therefore, this court will not consider it.[3] Likewise, plain-

3. Even if this motion were properly before the court, it would be denied. Plaintiff essentially

seeks to prevent the defendants from defending the case. Plaintiff argues that as a matter of

tiff's second motion *in limine* and defendants' motion to quash subpoena will be denied as moot.

An appropriate order will be entered.

## ORDER

This matter having come before the court on the motion of plaintiff for summary judgment, the cross-motions of defendant Township of Mantua and defendants Good, Jacoby, and Mayberry for summary judgment, the motion *in limine* of plaintiff to exclude, *inter alia*, the argument of defendants that *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) is not controlling, and defendants' motion to quash plaintiff's notice in lieu of subpoena; and

For the reasons stated in the court's opinion of this date;

IT IS on this 14th day of May, 1990 hereby

ORDERED that plaintiff's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that the cross-motion for summary judgment of defendant Township of Mantua is GRANTED and the complaint against this defendant is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the cross-motion for summary judgment of defendants Good, Jacoby, and Mayberry is GRANTED and the complaint against these defendants is DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the motion *in limine* of plaintiff to exclude, *inter alia*, the argument of defendants that *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) is not controlling is DENIED IN ITS ENTIRETY.

IT IS FURTHER ORDERED that the motion of defendants to quash plaintiff's notice in lieu of subpoena is DENIED AS MOOT.

No costs.

law, the deputy clerk's position is subject to *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), thus defendants should not be permitted to argue otherwise. On a motion for summary judgment, the entire issue in this case is whether *Elrod* and its progeny protect the position of deputy clerk. The court could not prevent defendants from arguing that it does not. Additionally, defendants have shown that they knew of plaintiff's alleged poor performance as deputy clerk before the meeting at which the Committee decided to replace her. Defendants, therefore, should be able to argue that these facts justified their decision not to reappoint plaintiff. The balance of plaintiff's motion seeks to exclude evidence that is not before this court on the cross-motions for summary judgment and, therefore, would have been denied as moot given the outcome of the motions for summary judgment.