592 A.2d 260

CITY COUNCIL, CITY OF ORANGE TOWNSHIP, PLAINTIFF–AP-
PELLANT, v. ROBERT L. BROWN, MAYOR OF CITY OF
ORANGE TOWNSHIP, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued May 6, 1991—Decided June 14, 1991.

Before Judges DREIER, ASHBEY and LANDAU.

*Joseph G. Dooley, Jr.* argued the cause for appellant (*William E. Byer, Jr.* and *Joseph G. Dooley,* of counsel and on the brief).

*Stephen E. Trimboli* argued the cause for respondent (*Genova, Burns & Schott,* attorneys; *Stephen E. Trimboli,* of counsel and *Stephen E. Trimboli* and *James J. McGovern, III,* on the brief).

The opinion of the court was delivered by

ASHBEY, J.A.D.

Plaintiff, City Council, City Of Orange Township (Council), appeals from an order dismissing its complaint in lieu of prerogative writs against the Mayor for laying off certain employees.

We affirm, substantially for the reasons given by Judge Paul B. Thompson in his December 5, 1990 letter opinion.

The impasse between the Council and the Mayor generating this appeal developed when the Mayor laid off two subordinates of the municipal clerk. At issue is the Mayor's authority under the Faulkner Act, *N.J.S.A.* 40:69A–1 *et seq.*, in light of Orange's ordinances.

Orange operates under a mayor-council plan of government. Its council exercises legislative power. *N.J.S.A.* 40:69A–36. The council by statute is limited in its role concerning municipal employees, and "shall deal with employees of the department of administration and other administrative departments solely through the mayor...." *N.J.S.A.* 40:69A–37.1. The council appoints the municipal clerk, who serves as clerk of the council, to compile its ordinances and resolutions, "and perform such functions as may be required by law." [1] *N.J.S.A.* 40:69A–38. Each municipality is required to have a municipal clerk. *N.J. S.A.* 40A:9–133. Such clerks achieve tenure, *N.J.S.A.* 40A:9–133.7, and "shall not be removed [from office] except for good cause shown after ... [a] hearing". *N.J.S.A.* 40A:9–134. No ordinance may reduce the salary of a municipal clerk during term. *N.J.S.A.* 40A:9–165. The governing body may also by ordinance create the office of deputy municipal clerk, "and provide for appointments thereto." *N.J.S.A.* 40A:9–135.

Respecting the appointment power of the council, 1985 amendments to the Faulkner Act also provided:

---

[1] The municipal clerk, as the secretary to the governing body, acts as an election official and administrative official, whose status "depends upon gaining and maintaining the complete confidence of the governing body, the press, the taxpayer, and the citizen." *Zold v. Township of Mantua,* 737 *F.Supp.* 308, 316 (D.N.J.1990), quoting D. Carlson, *The Office of the Clerk,* at 2–2. In addition, the clerk is privy to the council's confidential information, unlike other council employees, whose jobs could be characterized as "ministerial." *Id.* at 318.

> The legislative power of the municipality shall be exercised by the municipal council, subject to the procedures set forth in this plan of government ... and may ... be exercised by resolution, including, but not limited to:
>
> ....
>
> j. The election, appointment, setting of salaries and removal of officers and employees of the council, subject to any pertinent civil service requirements and any pertinent contractual obligations, and within the general limits of the municipal budget;

*N.J.S.A.* 40:69A–36j.

The 1985 legislative amendments were preceded by a comprehensive committee report which described the council power at that time as follows:

> The council is limited to legislative functions, with its only appointment based upon the charter being that of the municipal clerk. It has various investigative and fiscal control powers, but may remove municipal officers only for cause.

*The Changing Structure of New Jersey Municipal Government,* incorporated as the Thirtieth Report of the County and Municipal Government Study Commission, at 26 (1985). That report characterized the result as "leading to an atmosphere of contention and conflict between mayor and council." *Ibid.*[2]

Governor Kean, returning the draft of the ensuing 1985 legislation, known as the Lynch Act, specifically urged that amendments "make clear that the municipal council shall be able to set the salaries of council employees, subject to [civil service, contract and budget]."[3] The prior draft provided only for election, appointment and removal of council employees.

Under the present Faulkner Act, including the 1985 amendments, the mayor is the chief executive and responsible for supervising the departments of the municipal government.

---

[2] *See Forms of Municipal Government in New Jersey, Report of the County and Municipal Government Study Commission,* at 136 (1979).

[3] Respecting the employee removal right of the mayor, the Governor also urged that the amendment "specify that [the right of the mayor to remove municipal officers and employees] be confined to municipal executive officers." *Ibid.* Governor's statement to Senate, No. 1206—*L.* 1985, *c.* 374, reprinted following *N.J.S.A.* 40:69A–32.

*N.J.S.A.* 40:69A–32b; *N.J.S.A.* 40:69A–40. The mayor is responsible for all administrative or executive functions "assigned by general law to the governing body," whereas the council is responsible for "any legislative and investigative functions assigned by general law to the governing body." *N.J.S.A.* 40:69A–32b. The mayor has the statutory duty to "supervise the ... personnel ... procedures as may be authorized by ordinance...." *N.J.S.A.* 40:69A–40i. The mayor runs the municipal departments which are established by ordinance. All administrative functions, "other than those vested in the offices of the municipal clerk ... shall be allocated and assigned" within administrative departments under the mayor. *N.J.S.A.* 40:69A–43(a). The mayor's duties include enforcement of "the charter and ordinances of the municipality and all general laws applicable thereto...." *N.J.S.A.* 40:69A–40a.

Department heads, appointed by the mayor, with consent of council, may be removed by the mayor who may also remove "any other municipal executive officers, subject to council disapproval." *N.J.S.A.* 40:69A–43(c). Department heads appoint subordinate personnel and may remove them with the consent of the mayor. *N.J.S.A.* 40:69A–43(d). The office of the municipal clerk "shall be subject to such general administrative procedures ... as are departments ... including, but not limited to, ... personnel procedures and regulations ... as are generally required of departments." *N.J.S.A.* 40:69A–43(a).

A municipality however may selectively change the delegation of authority where that authority is not mandated to be exercised by one part of government or the other.

> Each municipality governed by an optional form of government pursuant to this act shall, subject to the provisions of this act or other general laws, have full power to:
>> (a) Organize and regulate its internal affairs and to establish, alter, and abolish offices, positions and employments and to define the functions, powers and duties thereof and fix their terms, tenure and compensation.

*N.J.S.A.* 40:69A–29. *See Hutt v. Robbins,* 98 *N.J.Super.* 99, 106, 236 *A.2d* 172 (App.Div.1967), *certif. denied,* 51 *N.J.* 185, 238 *A.2d* 471 (1968) (power to allocate municipal powers cannot

validate ordinance interpretation giving council power to prevent department head from exercising statutory power to remove subordinate).

Orange, N.J., Code § 4-15, following the statute, mandates that the City Council "shall appoint a clerk ... to provide such ... staff services as the members shall require." The clerk "shall select subordinate personnel, with the advice and consent of the Council, to such positions as the Council may authorize." Respecting "layoffs", however, the city ordinance provided for uniform procedures applicable to all city employees, adhering to the provisions of the civil service regulations, including a definition of "layoff." That term was defined as, "the involuntary separation of an employee from the City of Orange Township for reasons other than delinquency or misconduct."

The ordinance further provided in the section which is crucial to this appeal, that "[l]ayoffs, and demotions in lieu of layoffs, *shall be ordered by the Mayor in accordance with Civil Service Procedures."* Orange, N.J., Code § 23-32C(1) (emphasis added).

■ Thus, the ordinances provided that the clerk could select subordinates. While the power to select may imply a power to remove, *N.J.S.A.* 40:69A-36j, the ordinance did not provide specific authority in the clerk or council to "lay off" the subordinates. The ordinance specifically allocated that power to the mayor. Although the municipality has power to "alter, and abolish ... employments," *N.J.S.A.* 40:69A-29(a), neither that power, nor the power to "lay off" personnel, appears in the Faulkner Act as mandatorily allocated either to the mayor or to the council. *See N.J.S.A.* 11A:8-1. Thus there was no prohibition against Orange allocating a lay-off power to either the mayor or the council. *See Hutt v. Robbins, supra,* 98 *N.J.Super.* at 106, 236 *A.*2d 172. When Orange used the term "layoff" to denote a power delegated exclusively to the Mayor, particularly when juxtaposed with a reference to observing civil service procedures, we must conclude there was an intentional

selection of terms. *See generally JCRA v. Tug and Barge Urban Removal Corp.*, 228 *N.J.Super.* 88, 99, 548 *A.*2d 1167 (Law Div.1987), *aff'd o.b.*, 228 *N.J.Super.* 24, 548 *A.*2d 1133 (App.Div.1988).

The aim of courts in construing ordinances, like statutes, is to determine legislative intent. Ordinances should be liberally construed in favor of the municipality. *White Castle v. Planning Board of Clifton*, 244 *N.J.Super.* 688, 691, 583 *A.*2d 406 (App.Div.1990); *L & L Clinics, Inc. v. Town of Irvington*, 189 *N.J.Super.* 332, 336, 460 *A.*2d 152 (App.Div.), *certif. denied*, 94 *N.J.* 540, 468 *A.*2d 191 (1983). When construing any legislation, we apply first its plain meaning. *See Dept. of Law & Public Safety v. Bigham*, 119 *N.J.* 646, 650, 575 *A.*2d 868 (1990); *County of Essex v. Waldman*, 244 *N.J.Super.* 647, 656, 583 *A.*2d 384 (App.Div.1990). Specific meaning supercedes a general one in interpreting legislative intent. *See* 2A *Sutherland, Statutory Construction*, § 49.02 at 348 (4th ed. 1984). While we do not have the benefit of any legislative history concerning the ordinances in question, we do not find a clear deviation from the presumed purpose of municipal legislation concerning its government, that it be efficient and cost-effective. Such overall purpose guides our determination of legislative intent. *See State v. Olivio*, 123 *N.J.* 550, 556, 589 *A.*2d 597 (1991); *In the Matter of Woodhaven Lumber and Mill Work and State of New Jersey v. Asbury Park Press*, 123 *N.J.* 481, 489, 589 *A.*2d 135 (1991).

In effect the Council concedes that the "layoff" ordinance leaves little room for statutory construction. The Council claimed at trial and on appeal, that the ordinance interpretation violated the doctrine of separation of powers, since it gave the executive power to render the legislature ineffective as evidenced by the Mayor's action.

The judge took testimony on this issue. The evidence showed that the municipality had severe fiscal problems and a high tax

rate.[4]  Over the summer of 1990 the Council cut Orange's municipal budget.  The Mayor then issued an order that, "in order for this Administration to follow the spending plan set and passed by the City Council, various employees, both provisional and permanent must be eliminated from employment...."  Among those proposed to be laid off were Teresa Luongo, assistant municipal clerk, and Marie Marzano, a principal account clerk.[5]  Pursuant to *N.J.A.C.* 4A:8–1.4, the Mayor submitted a proposed "City of Orange Layoff Plan" to the New Jersey Department of Personnel on September 20, 1990.[6]

The Council proffered to the judge that its 1990 budget, as promulgated, provided sufficient money for the laid-off employees.  In support of the Mayor's position that layoffs were, essentially, across the board, Thomas J. Morrison III, the business administrator of Orange, testified that his staff was reduced and that departmental layoffs also occurred in Administrative Services, the Public Works Department, the Director's Office, Equipment and Vehicle Maintenance, and the Parks and Public Property Department.  The Council challenged this testimony, urging that there had been increases in personnel.  Morrison testified that certain increases in staff were attributable to a prior administration.  The Council also proffered evidence that the staffing levels of other various Clerk's Offices in Essex County demonstrated that the Mayor's action was discriminatory.

As the Mayor notes, the doctrine of "separation of powers" has generally not been applied to municipalities, *Smith v.*

---

[4]The trial court took judicial notice of "the fact that Orange has very limited resources."

[5]As a result of the layoff, Marzano was given demotional rights to the position of senior clerk typist held by Roxanne Prioletti of the clerk's office. There remained two employees in the clerk's office.

[6]That action was and is the subject of a separate personnel appeal. The Council there contends that the Mayor is not the appointing authority for these two employees.

*Township of Hazlet,* 63 *N.J.* 523, 530, 309 *A.*2d 210 (1973), although the intent of the Lynch amendments to the Faulkner Act was certainly to separate more clearly the function of the mayor from those of the council, subject to the ability of the municipality to sort out powers not otherwise mandated. *See In re Shain,* 92 *N.J.* 524, 537, 457 *A.*2d 828 (1983).[7]

The judge obviously found without merit the Council's claims the Mayor had violated the council's powers intentionally in order to retaliate for budget cuts. Nothing else in the record supported the bare assertion that the Council's legislative powers were actually interfered with, or that all of its legislative powers could not be exercised by the Council with the assistance of its two remaining employees.[8]

It is arguable that, under *N.J.S.A.* 40:69A–36, the Council could pass a resolution appointing either one of the two laid-off employees, and the Mayor could lay off that employee almost simultaneously, leading to an impasse. Fortunately, responsible representatives of government took no such action. We thus need not pass upon whether the ordinance, properly construed, gave the Council the power to appoint the clerk's subordinates, although we have noted that the Mayor is not empowered to remove department head subordinates unilaterally. The clerk is similar to a department head, *N.J.S.A.* 40:69A–43(a), and the council is the clerk's appointing authority, *N.J.*

---

[7]The Assembly Municipal Government Committee noted that the "concept of the separation of powers" was inherent in the mayor-council form. *Assembly Municipal Government Committee Statement, S.* No. 1206 (1984), which as amended, became the Lynch Act.

[8]The appellate record does not contain ordinances or resolutions concerning the duties of the personnel laid off. Counsel referred to Luongo as "assistant clerk", and as the "only one who can act in the absence of the Clerk." We assume that Luongo was a statutorily authorized deputy clerk, and that the one remaining subordinate employee will serve that function. The parties did not make any separate argument concerning Luongo's status based upon the nature of her appointment. *See Zold v. Township of Mantua, supra,* 737 *F.Supp.* at 318.

*S.A.* 40:69A–38, as is the mayor for department heads, *N.J.S.A.* 40:69A–43(c). In any event, if the municipality desires to allocate to the Council or to the municipal clerk, with the consent of the Council, the power to lay off these personnel, it must redraft its ordinance.

Having determined that the Mayor had the authority to lay off the subordinates of the municipal clerk, we need not consider defendant's alternative arguments.

Affirmed.