**Jeanette L. ZOLD, Appellant,**

**v.**

**TOWNSHIP OF MANTUA, Mayor William "Bill" Good, Committeeman Ehrlen Jacoby, Committeeman John Mayberry.**

No. 90–5513.

United States Court of Appeals, Third Circuit.

Argued Jan. 28, 1991.

Decided June 17, 1991.

Rehearing and Rehearing In Banc Denied July 24, 1991.

Fredric J. Gross (Argued) Mount Ephraim, N.J., for appellant.

David W. Morgan (Argued), Holston, MacDonald & Morgan, Woodbury, N.J., for appellee Township of Mantua.

Thomas H. Ward (Argued), Albertson, Ward & McCaffrey, Woodbury, N.J., for appellees William Good, Ehrlen Jacoby, and John Mayberry.

Before SLOVITER, Chief Judge *, NYGAARD, Circuit Judge, and KATZ, District Judge.**

OPINION OF THE COURT

SLOVITER, Chief Judge.

In this appeal we revisit the application of the Supreme Court's decisions holding that firing of state and municipal employees for political purposes violates the First Amendment. In a suit filed by the former deputy municipal clerk of Mantua Township, the district court granted the defendants' motion for summary judgment, holding that the Township Committee could properly consider the deputy clerk's political affiliation in failing to reappoint her. Plaintiff appeals, arguing that the district court erred as a matter of law.

I.

*Procedural History*

Jeanette Zold was employed as deputy township clerk in Mantua Township, New Jersey, from September 1987 through December 1988. Zold is active in the local

---

* The Honorable Dolores K. Sloviter became Chief Judge on February 1, 1991.

** The Honorable Marvin Katz, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

Democratic Party. The Democrats lost control of the five-member Township Committee to the Republicans in the November 1988 election. Zold's one-year appointment ended the following month, and she was not reappointed to her job as deputy clerk. A letter of termination from the committeeman who is now mayor, Republican William Good, stated that he appreciated the "good work and cooperation" Zold had given him as deputy clerk "without any thought as to political affiliation." App. at 3. Good also stated, "the rest of my party doesn't know you as I feel I do," and that if they did, "then they wouldn't have even thought about replacing you." *Id.*

Zold filed this action under 42 U.S.C. § 1983 against the Township of Mantua, Mayor Good, who as noted above was a committeeman at the relevant time, and his two Republican committeemen colleagues alleging that they violated her First Amendment rights by firing her on the basis of her political beliefs. After discovery, all parties filed motions for summary judgment. The district court held that there was an issue of fact as to whether the Committee failed to reappoint Zold because of her poor job performance, as the defendants contended, and that it could not give summary judgment for defendants on that basis. However, the court granted the defendants' motion for summary judgment because it concluded that the position of deputy clerk was a confidential job and therefore the Township Committee could properly consider Zold's political affiliation in its decision not to reappoint her. *Zold v. Mantua,* 737 F.Supp. 308, 318 (D.N.J.1990).

## II.

### *Legal Principles*

The Supreme Court has held that the dismissal of certain public employees solely because of their partisan political affiliation infringes their First Amendment rights of belief and association. *See Branti v. Finkel,* 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). "A nonpolicymaking, nonconfidential government employee" cannot be discharged on the sole ground of his or her political beliefs. *Elrod,* 427 U.S. at 375, 96 S.Ct. at 2690 (Stewart, J., concurring). On the other hand, party affiliation may be an acceptable requirement "if an employee's private political beliefs would interfere with the discharge of his public duties." *Branti,* 445 U.S. at 517, 100 S.Ct. at 1294. An employee who "acts as an advisor or formulates plans for the implementation of broad goals" is in that position. *Elrod,* 427 U.S. at 367–68, 375, 96 S.Ct. at 2686–87, 2690.

However, "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti,* 445 U.S. at 518, 100 S.Ct. at 1295. This court has stated, "should a difference in party affiliation be highly likely to cause an official to be ineffective in carrying out the duties and responsibilities of the office, dismissals for that reason would not offend the First Amendment." *Ness v. Marshall,* 660 F.2d 517, 521 (3d Cir.1981). The burden of proof is on the defendant to demonstrate "an overriding interest" in order to validate an encroachment on an employee's First Amendment rights. *Elrod,* 427 U.S. at 368, 96 S.Ct. at 2687.

It is not always easy to determine whether political affiliation is a legitimate factor to be considered for a particular job. *Branti,* 445 U.S. at 518, 100 S.Ct. at 1294–95; *Elrod,* 427 U.S. at 367–68, 96 S.Ct. at 2686–87; *Rosenthal v. Rizzo,* 555 F.2d 390, 393 n. 5 (3d Cir.), *cert. denied,* 434 U.S. 892, 98 S.Ct. 268, 54 L.Ed.2d 178 (1977). "The nature of the responsibilities is critical.... [T]he political loyalty 'justification is a matter of proof, or at least argument, directed at particular kinds of jobs.'" *Elrod,* 427 U.S. at 367–68, 96 S.Ct. at 2686–87 (citation omitted).

Each decision is, of course, fact specific for that case. Thus, we have held that a public employer may discharge on the sole basis of political affiliation such employees as a city solicitor and his assistants, *Ness,* 660 F.2d at 522, and a county's assistant

director for public information, *Brown v. Trench,* 787 F.2d 167, 170 (3d Cir.1986). On the other hand, we have held that a county's second deputy recorder of deeds is protected under *Elrod* and *Branti,* even though the recorder (whom the second deputy could succeed) is an elected official. *Furlong v. Gudknecht,* 808 F.2d 233, 236–37 (3d Cir.1986); *see also Savarese v. Agriss,* 883 F.2d 1194 (3d Cir.1989) (affirming a judgment that the director of a county transportation authority was improperly fired for political reasons).

■ In cases implicating the First Amendment, it is the responsibility of the appellate court to "make an independent examination of the whole record." *New York Times Co. v. Sullivan,* 376 U.S. 254, 285, 84 S.Ct. 710, 729, 11 L.Ed.2d 686 (1964) (quoting *Edwards v. South Carolina,* 372 U.S. 229, 235, 83 S.Ct. 680, 683, 9 L.Ed.2d 697 (1963)). When the issue on appeal turns on a constitutional fact, *i.e.,* "a fact whose 'determination is decisive of constitutional rights,'" *New Jersey Citizen Action v. Edison Township,* 797 F.2d 1250, 1259 (3d Cir.1986), appellate courts have the obligation to give such facts special scrutiny. Constitutional litigation "demands fact analysis of the most particularized kind." *Id.* (citations omitted). The Supreme Court has explained that the doctrine of constitutional facts enables the appellate court "to assure [itself] that the judgment does not constitute a forbidden intrusion on the field of free expression." *New York Times,* 376 U.S. at 285, 84 S.Ct. at 729.

An appellate court in such instances may draw its own inference from facts in the record. *Bender v. Williamsport Area School Dist.,* 741 F.2d 538, 542 n. 3 (3d Cir.1984). Thus, for example, in *Branti* the Supreme Court reviewed the facts on record and concluded that it was manifest that the continued employment of an assistant Public Defender could not properly be conditional upon his allegiance to the political party in control of the county government. 445 U.S. at 519, 100 S.Ct. at 1295. Similarly, the Court concluded in *Elrod* that non-civil service employees in a county

sheriff's office, including the chief deputy of the process division who had supervisory responsibilities, could not be discharged solely on the basis of party affiliation. 427 U.S. at 350–51, 96 S.Ct. at 2678–79.

Finally, the *Branti–Elrod* principles are equally applicable to the failure to reappoint an employee at the end of a term, as in this case, as they are to dismissal from an at-will term of employment. In *Rutan v. Republican Party of Illinois,* — U.S. ——, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), the Court held that the First Amendment prohibits failure to promote, transfer, recall or hire as well as dismissal of an employee on the basis of political affiliation. *See also Furlong,* 808 F.2d at 238 (holding that the First Amendment protects against both "a firing or a failure to reappoint").

### III.

#### *Discussion*

#### A.

■ Both parties agree that the relevant facts are undisputed. The parties dispute only how the nature of the job should be characterized. Thus, this court is in a position to apply the relevant legal principles to those facts.

New Jersey law allows municipalities to "create the office of deputy municipal clerk and provide for ... the powers, duties and functions of such office," specifying only that "[d]uring the absence or disability of the municipal clerk, the deputy municipal clerk shall have all the powers of the municipal clerk...." N.J.Stat.Ann. § 40A:9–135 (West 1980). In Mantua, the deputy clerk is the highest-ranking full-time municipal employee. The deputy clerk is appointed to a one-year term by the Township Committee to serve as the assistant to the township clerk, who is a part-time employee also appointed by the Committee. Thus, the deputy clerk handles the day-to-day duties of the clerk and must fill in for the clerk whenever the latter is unavailable.

The material prepared by Dorothy Carlson, Clerk of the Borough of Stafford, for a course called "Office of the Clerk," which

New Jersey requires all clerks to pass to earn certification, lists the clerk's duties. *See Zold,* 737 F.Supp. at 316. The statutory duties of the clerk include acting as (1) secretary to the governing body, (2) secretary of the municipal corporation, (3) election official and (4) administrative official on the municipal level. Defendants make no argument that any of the clerk's functions as either secretary of the municipal corporation or as an election official entail the type of responsibilities for which political affiliation is an appropriate consideration. Thus, even assuming that the clerk's duties in these regards devolve upon the deputy clerk who is a full-time employee, nothing in those duties supports the defendants' contention. According to the Carlson materials, as secretary of the municipal corporation, the clerk (or deputy), "[m]aintains custody of the municipal seal"; "[s]igns the majority of official documents"; "[a]ttests signatures of municipal officers and officials"; and "[m]aintains receipt of service of legal documents." App. at 49.

As election official the clerk (or deputy): "Registers voters"; "[c]ertifies vacancies existing on the local level"; "[m]aintains receipt of nominating petitions and certification to the county clerk of local candidates nominated by petition"; "[e]xercises quasi-judicial authority in determining the validity of petitions"; "[c]onducts the drawing for position of candidates on the local ballot (primary and municipal)"; "[f]urnishes material for local elections"; "[s]elects polling places"; "[m]aintains receipt of election results"; "[c]ertifies to the county clerk persons elected to partisan county committee offices in each election district"; and "[c]anvasses the votes for and certifies election of candidates for local office at the primary, general and municipal elections." App. at 49.

Nor is there any function among the clerk's duties as an administrative official for which political affiliation could reasonably be deemed essential. The ministerial activities emphasized by Zold that occupy most of her time include selling dog and marriage licenses and collecting payment for all applications, collecting information for all members of the Township Committee, routing citizen complaints about municipal services to the appropriate township employees and paying invoices for the township Planning Board.[1]

In holding that political affiliation is an appropriate consideration for the deputy clerk's position, the district court referred primarily to three functions. First, it noted that the deputy may stand in for the clerk in fulfilling the statutory duty of the secretary to the governing body. In this capacity, the deputy clerk could have access to confidential information because the clerk or deputy attends closed sessions in which the Committee discusses appointments and personnel, handling litigation, decisions relating to enactment of ordinances and resolutions, and strategy relating to municipal business. The clerk or deputy can be privy to the Committee's discussion of civil or criminal penalties.

The district court also emphasized that "[t]he deputy clerk stands in for the municipal clerk in his or her role as liaison officer between the governing officials and the taxpayers and between the executive and the general body of municipal personnel." 737 F.Supp. at 317. The court noted that in fulfilling those functions the deputy clerk has had duties such as dealing daily with the Township engineer and solicitor as well as discussing with the auditor action to collect mobile home fees that have been uncollected for a long time.

The other function the district court relied upon in granting summary judgment to the defendants was the deputy clerk's adoption of the municipal clerk's role "as an important public relations figure in the municipal organization." *Id.* The Carlson materials state:

> The status of the clerk ... depends upon gaining and maintaining the com-

---

1. Zold's recitation of the duties she performed is consistent with that contained in the Carlson materials. Carlson, however, also includes as one of the administrative functions "[c]onducts business with other municipal departments as directed by the governing body." App. at 50. As noted in the text, nothing in this function justifies a political affiliation requirement.

plete confidence of the governing body, the press, the taxpayer, and the citizen. In other words, much of the clerk's effectiveness depends on good public relations.

App. at 50. Thus, the clerk's office often becomes "the hub of municipal operations." App. at 47. Because many of the clerk's tasks are done by the deputy clerk, that description more aptly applies to the deputy's office.

The district court gave great weight to the public relations aspect of the deputy clerk's job because it believed that our decision in *Brown v. Trench*, 787 F.2d 167 (3d Cir.1986), was controlling. In *Brown*, we held that the county assistant director of public information who had responsibility for writing press releases and speeches for elected officials, promoting county projects, and for "act[ing] as spokesman for the [county] Commissioners" before the press and public, could be discharged on the basis of political affiliation. *Id.* at 170. Here, by contrast, the Mantua deputy clerk is officially assigned none of those tasks. Her contact with the press is generally limited to informing reporters about the agenda of upcoming meetings, App. 97–98, and her contact with the public is, as the district court put it, "receiving inquiries and complaints from the electorate at and responding in kind," 737 F.Supp. at 317, rather than promoting policies. Therefore, *Brown* does not provide a basis to conclude that the deputy clerk's political affiliation is a job requirement. Inasmuch as the clerk, as well as the deputy clerk, has the spokesman role, and the clerk cannot be discharged each time a party that does not have his allegiance gains control of the government, the public relations function does not support the district court's holding.

Turning to the functions exercised by the deputy clerk as secretary to the Township Committee, it is apparent that most of these functions, as listed in the *Carlson* materials, are purely ministerial, such as "processes, records, files, and advertises" ordinances, resolutions, the municipal bud-

get, and bids for municipal equipment and supplies. App. at 49. The same can be said of the function of administering and recording the oath of office and maintaining all official records not specifically handled by other departments.

Arguably, even though there is no evidence that the clerk or the deputy clerk acts as anything other than a functionary during the closed Committee meetings, the access to confidential information which may be discussed on these occasions might signify that political affiliation, translated in this case into loyalty to the majority party, is a job requirement. Nor do we deny that there is some sensitivity and discretion which must be exercised when the deputy clerk is acting as a liaison or as a spokesman. However, these factors cannot serve to demonstrate the need for party affiliation because virtually all of these functions are duties that the deputy assumes from the clerk. State law makes clear that political affiliation is not a factor in the municipal clerk's position.

New Jersey statutory law requires that every municipality appoint (rather than elect) a municipal clerk, N.J.Stat.Ann. § 40A:9–133 (West Supp.1990), who must pass a state examination and obtain a clerk's certificate to hold office. *Id.* §§ 40A:9–133.2 to –133.6 (West Supp.1990). Ever since at least 1971, the clerk (though not the deputy clerk) has been eligible under New Jersey law for tenure. If s/he serves continuously for five years, s/he holds the position indefinitely and can be fired only for good cause. In the 1980s the New Jersey legislature enacted several statutory revisions to the municipal clerk's office clearly aimed to make that position nonpolitical. In 1982, the clerk's office was changed from an elected to an appointed one. N.J.Stat.Ann. 40A:9–133 (West Supp. 1990). In 1985, the legislature required training and certification for clerks, and significantly strengthened the clerks' job security by adding a provision that explicitly protects even non-tenured clerks from political firings after three years of ser-

vice.[2]  *Id.* § 40A:9–133.2 to –133.6.  A contemporaneous statement by a state Senate committee on the 1985 bill voiced the opinion that the bill "would professionalize the office of municipal clerk." *Id.* § 40A:9–134 (Senate Committee Statement); *id.* § 40A:9–133.7, –134.

The current township clerk, John Tighe, a Democrat, has tenure and has held his position since 1958.  In the more than three decades that he has served, control of the Township Committee has been traded several times between Republicans and Democrats.  Yet Tighe has continued to fulfill his functions of attending closed meetings of the Township Committee, presumably meetings at which pending litigation, personnel decisions, proposed ordinances and other ostensibly sensitive or confidential issues have been discussed.  Under these circumstances, we cannot conclude that duties fulfilled by a tenured, nonpolitical appointee suddenly become confidential or political on those occasions when the deputy clerk is called to substitute for him.

■ The defendants have expressed concern that an employee whose tasks include contact with the public could deliberately harm the government's (and thereby the dominant party's) image in the public eye; one who must provide information to government officials perhaps could deliberately undermine policy decisions or administrative efficacy.  However, any government employee, including those with the most routine clerical tasks, could injure the employer's efficiency or public image.  A receptionist could put callers on hold and neglect to answer or forward their inquiries; an office clerk could misfile forms, deliberately delay their processing, and treat visitors rudely.  The obvious response is that employees who engage in such behavior can be discharged on the basis of their poor job performance.  The potential that an employee may cause havoc is in itself no basis for holding the employee can be hired or discharged because of his or her political affiliation.

A closely analogous argument was considered and rejected by Justice Brennan in *Elrod* where he stated that the fear that "employees of political persuasions not the same as that of the party in control of public office will not have the incentive to work effectively and may even be motivated to subvert the incumbent administration's efforts" is not a persuasive justification for dismissals based on political affiliation.  *Elrod,* 427 U.S. at 364, 96 S.Ct. at 2685.  The opinion concludes that "it is doubtful that the mere difference of political persuasion motivates poor performance; nor do we think it legitimately may be used as a basis for imputing such behavior." *Id.* at 365, 96 S.Ct. at 2685.

■ Nor can the Township find support from its long tradition of treating the deputy clerk's job as a political patronage position to be filled by the party in power.  The patronage practices held to be in violation of the First Amendment by the Supreme Court had long histories.  See *Elrod,* 427 U.S. at 353–55, 96 S.Ct. at 2679–80.  Furthermore, the fact that Township Committee members have traditionally sought confidential and valuable advice from the deputy clerk on pending policy decisions does not transform the deputy clerk into a confidential employee under *Elrod.*

■ The Township offers no support, legal or otherwise, for its argument that because the clerk is tenured only after five years of service, and the deputy clerk is never tenured, political considerations may govern their selection and retention.  The Township's premise that political considerations are permissible in the discharge or reappointment of a clerk before tenure is unsupported.  There is no basis to assume that an employee hired at-will who can be fired for any or no reason can be fired for a constitutionally prohibited reason.  *See Elrod,* 427 U.S. at 360–61, 96 S.Ct. at 2683–84.  The prohibition on political firings from *Elrod* and its progeny is a constitu-

---

**2.** The new section provided that any tenured or certified clerk with three consecutive years' service "shall hold his office during good behavior

... and he shall not be removed therefrom for political reasons." *Id.* § 40A: 9–133.7.

tional requirement independent of state law.

Although state law is not necessarily dispositive of the inquiry whether an employee is a confidant, policymaker or other employee for whom political affiliation is appropriate under *Elrod*, it is an important and influential factor. *See Branti*, 445 U.S. at 518, 100 S.Ct. at 1294–95 (hypothesizing that if state law made elected judgeships partisan, a judge could be discharged for party affiliation); *see also Furlong*, 808 F.2d at 236 (concluding it is a "major factor" that state law permits an appointed second deputy to ascend to the partisan elected office of recorder of deeds, though that statutory scheme is "not outcome determinative").

It is significant that the legislature's determination in 1985 to depoliticize the clerk's office changed the nature (or, perhaps, simply recognized the nature) of the deputy clerk's job as well. The deputy clerk is by statute merely a surrogate for the clerk and it is those functions performed in that capacity that must determine whether political affiliation is relevant. The New Jersey legislature evaluated the requirements for the clerk's position when it provided for tenure, and clearly decided that there was no need for that position to be filled by a political ally and advisor of the party in power. Since the legislature knew that the deputy clerk position did not entail any functions more confidential than those of the clerk, there is no reason to assume any legislative intent to fill that position politically. Indeed, in *Furlong*, we held that the second deputy of a Recorder of Deeds was protected by *Elrod*, even though the Recorder was an elected official and, under the statute, the deputy could succeed to the Recorder's office. 808 F.2d at 236–38. Applying the undisputed facts in light of the relevant precedent, we conclude that there is no basis to hold that the deputy clerk's functions place him or her outside the scope of *Elrod*.

Because the defendants have failed to carry their substantial burden of demonstrating that political affiliation is an appropriate requirement for the effective performance of the deputy municipal clerk of Mantua Township, we will reverse the district court's order granting summary judgment in favor of the defendants.

### B.

■ Of course, plaintiff retains the burden of proving that she was not reappointed because of her political affiliation. There remains for disposition the defendants' allegation that they failed to reappoint Zold due to her poor job performance, which the district court held presented a material issue of fact. If defendants can prove that Zold's allegedly poor performance was a factor in her termination, the court's disposition will then be controlled by the precedent covering mixed-motive employee discharges. *See Givhan v. Western Line Consol. School Dist.*, 439 U.S. 410, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979); *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

In *Givhan*, the Supreme Court held that the conduct for which the petitioner, a public school teacher, was fired was protected by the First Amendment. The Court stated that

> once the employee has shown that his constitutionally protected conduct played a "substantial" role in the employer's decision not to rehire him, the employer is entitled to show "by a preponderance of the evidence that it would have reached the same decision as to [the employee's] re-employment even in the absence of the protected conduct."

439 U.S. at 416, 99 S.Ct. at 697. *Accord Mt. Healthy*, 429 U.S. at 287, 97 S.Ct. at 576; *see also NLRB v. Transportation Management Corp.*, 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983) (approving a similar burden-shifting structure in employee discharge disputes covered by the National Labor Relations Act); *Lockhart v. Westinghouse Credit Corp.*, 879 F.2d 43, 49 & n. 7 (3d Cir.1989) (applying the *Transportation Management* burden-shifting structure in the age discrimination context).

The similarity of the case before us to *Givhan* and *Mt. Healthy* makes a comparable allocation of burdens appropriate on remand. Zold has presented sufficient evidence through the letter from Good explaining the failure to reappoint her that the Township defendants employed an impermissible political motive in their decision. Therefore, on remand, the burden will be on the defendants to demonstrate by a preponderance of the evidence that Zold would not have been reappointed solely because of her poor job performance.

## IV.

### *Conclusion*

For the reasons set forth above, we will reverse the summary judgment in favor of the defendants and remand for further proceedings consistent with this opinion.