Charles CHRISTY

v.

**PENNSYLVANIA TURNPIKE COMMIS-SION, Robert Brady, John Boschi, Vincent Greco and John Stewart.**

**Civ. A. No. 93–CV–3346.**

United States District Court, E.D. Pennsylvania.

March 9, 1994.

Imogene E. Hughes, John P. Hickey, Kenneth D. Kleinman, Kleinbard, Bell & Brecker, Philadelphia, PA, Joseph F. Lawless, Jr., Newtown Square, PA, for plaintiff.

Andrew Newman Howe, Michael M. Baylson, Duane, Morris & Heckscher, Philadelphia, PA, for defendants PA Turnpike Com'n, a Duly Organized and Existing Agency of the Com. of PA, Robert Brady, Individually and as a Com'r of the PA Turnpike Com'n, Vincent Greco, John A. Stewart, Individually and as Asst. Deputy Executive Directors—Maintenance of the PA Turnpike Com'n.

Andrew N. Howe, Duane, Morris & Heckscher, Lisa G. DiPietro, Reed, Smith, Shaw & McClay, Michael M. Baylson, Duane, Morris & Heckscher, David S. Fortney, Reed, Smith, Shaw & McClay, for defendant John Boschi, Individually and as Deputy Executive Director—Maintenance of the PA Turnpike Com'n.

Andrew Newman Howe, Duane, Morris & Heckscher, Philadelphia, PA, for defendants James J. Dodaro, Howard Yerusalim, Frank A. Ursomarso, James F. Malone, III, John L. Sokol, Jr., S. Michael Palermo, Joseph L. Dirienzo, Samuel S. Carnabuci, Melvin M. Shelton, Deborah Koval, Individually and in their Official Capacity, George Pilecki and Sean Pilecki, Individually.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

By way of the motions presently before the Court, the defendants in this civil action seek the entry of summary judgment in their favor on all counts of the plaintiff's complaint against them. For the reasons set forth in the following paragraphs, the motions are denied.

### I. *STATEMENT OF RELEVANT FACTS*

On June 22, 1993, the plaintiff, Charles Christy, commenced this case against the Pennsylvania Turnpike Commission and its individual commissioners and personnel committee members pursuant to 42 U.S.C. §§ 1983 and 1985 and for the common law tort of intentional infliction of emotional distress for the defendants' alleged failure/refusal to give him a promotion solely on political grounds.[1]

---

1. It should be noted that on February 4, 1994, this court granted plaintiff leave to file an amended complaint, the substance of which essentially operates to clarify the parties and facts underlying his causes of action without significantly altering the character of this action.

According to the pleadings, the plaintiff has been employed by the Turnpike Commission since 1976 in various positions and has been employed since 1983 as an Auto Mechanic 1. On November 4, 1992, the Commission posted a job vacancy notice for the position of Paint Crew Foreman. Charles Christy subsequently applied for that position and on January 19, 1993, he was interviewed therefor by the defendants Boschi, Greco and Stewart. Although the pleadings and the record in this matter are silent as to the number of applicants who applied for the paint crew foreman job, it appears that the plaintiff was one of three final candidates found to be qualified by Boschi, Greco and Stewart and whose name was forwarded on to the commission's personnel committee for consideration. According to the plaintiff, regardless of the fact that he was the most qualified person for the job, the paint crew foreman position was awarded to one Sean Pilecki, who had only been employed by the Commission for the preceding 4 and ½ years but whose father, George Pilecki, had political ties to various high-ranking officials of the Philadelphia County branch of the Democratic Party. Plaintiff further alleges that he was also turned down for political reasons when he applied for the position of Eastern Division Equipment Supervisor in early 1993.

In response to the plaintiff's allegations of political bias, the defendants first contend that they made their hiring decisions on the basis of which candidate was the most and best qualified person for the job(s) for which the applications were being made. In addition, Defendants have raised a number of affirmative defenses to the plaintiff's lawsuit, including the defense of immunity from suit.

## II. DISCUSSION

### A. Legal Principles Applicable to Summary Judgment Motions

Fed.R.Civ.P. 56(c) prescribes the appropriate principles to be applied by the district courts in determining motions for summary judgment. That rule states, in pertinent part:

... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

Under this rule, the courts must look beyond the bare allegations of the pleadings to ascertain if they have sufficient factual support to warrant their consideration at trial. *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287 (D.C.Cir.1988), *cert. denied,* 488 U.S. 825, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988). In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of that party as well. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *U.S. v. Kensington Hospital,* 760 F.Supp. 1120, 1126–1127 (E.D.Pa. 1991).

This is not to say, however, that the non-moving party may rest upon the allegations contained in his or her pleading in defense of a summary judgment motion. To the contrary, Fed.R.Civ.P. 56(e) states:

When a motion for summary judgment is made and supported as provided for in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Thus, while the moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact, the non-movant must then establish the existence of each element of its case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.,* 909 F.2d 1524, 1531 (3rd Cir.1990), *cert. denied,* 499 U.S. 921, 111

S.Ct. 1313, 113 L.Ed.2d 246 (1991). In other words, for a plaintiff to avoid summary judgment, there must be sufficient evidence from which a jury could find for the plaintiff. *Anderson v. Liberty Lobby, Inc., supra,* 477 U.S. at 248, 106 S.Ct. at 2510; *Laidley v. McClain,* 914 F.2d 1386, 1390 (10th Cir.1990).

B. *Defendants' Entitlement to Immunity from Suit Under the Eleventh Amendment to the U.S. Constitution*

At the outset, the defendants allege that they are entitled to the entry of judgment in their favor as a matter of law by virtue of the immunity provisions contained in the Eleventh Amendment to the U.S. Constitution. Specifically, that Amendment reads:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Nevertheless, there are two methods by which a state's eleventh amendment immunity may be overcome. First, Congress may explicitly legislate to abrogate this immunity; and second, the state may voluntarily waive its eleventh amendment immunity. *McConnell v. Adams,* 829 F.2d 1319, 1328 (4th Cir.1987). Absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court. *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.,* —— U.S. ——, —— ——, 113 S.Ct. 684, 687–688, 121 L.Ed.2d 605 (1993). This principle applies with equal force to bar a civil rights suit in federal court that names the state or a state department or agency having no existence apart from the state as a defendant. *See: Laskaris v. Thornburgh,* 661 F.2d 23, 25 (3rd Cir.1981), *cert. denied,* 469 U.S. 886, 105 S.Ct. 260, 83 L.Ed.2d 196 (1984); *Jimenez v. Lakelands Racing Association, Inc.,* 567 F.Supp. 1298, 1301 (W.D.Pa.1983).

The Supreme Court, however, has held that Congress did not intend by the general language of Section 1983 to override the traditional sovereign immunity of the States and, as the provisions of 42 Pa.C.S.A. § 8521 make clear, the Commonwealth of Pennsylvania has not consented to waive its eleventh amendment immunity:

(a) **General rule.**—Except as otherwise provided in this subchapter, no provision of this title shall constitute a waiver of sovereign immunity for the purpose of 1 Pa.C.S. § 2310 (relating to sovereign immunity reaffirmed; specific waiver) or otherwise.

(b) **Federal courts.**—Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States.

*Quern v. Jordan,* 440 U.S. 332, 342, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979).

In those cases where the bar of the eleventh amendment is raised and there has been no waiver of the immunity arising thereunder, it thus becomes incumbent upon the Court to ascertain whether or not the agency raising the defense has a sufficiently close nexus with the state to render it immune from suit as well. Whether or not an agency or instrumentality is the alter ego of the state and, therefore, immune from suit by virtue of the eleventh amendment is a question of federal, not state law and turns upon facts widely variant from case to case. *Smith v. New Jersey Transit Corp.,* 691 F.Supp. 888, 889 (E.D.Pa.1988); *Harris v. Pennsylvania Turnpike Commission,* 410 F.2d 1332, 1337 (3rd Cir.1969), *cert. denied,* 396 U.S. 1005, 90 S.Ct. 558, 24 L.Ed.2d 497 (1970). However, state decisions concerning the relationship of an agency to the state may be an important, and under certain circumstances, a controlling factor in the determination of immunity. *Blake v. Kline,* 612 F.2d 718, 722 (3rd Cir.1979), *cert. denied,* 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980).

In this regard, several courts have reasoned that the state is the real party in interest when the action seeks an award of money that will come from the state treasury. *Savage v. Commonwealth of Pennsylvania,* 475 F.Supp. 524, 531 (E.D.Pa.1979), aff'd, 620 F.2d 289 (3rd Cir.1980), citing, *inter alia, Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 464, 65 S.Ct. 347,

350–51, 89 L.Ed. 389 (1945); *DiPietro v. The Garden State Racing Association,* 463 F.Supp. 574, 576 (E.D.Pa.1978). Other factors worthy of consideration include: (1) whether the agency is performing a governmental or propriety function; (2) how local law defines the status and nature of the agency; (3) the degree of autonomy exercised by the agency over its own operations; (4) whether the agency's property is immune from state taxation; (5) whether the agency has been separately incorporated; (6) whether the agency has the power to sue and be sued and enter into contracts; and (7) whether the sovereign has immunized itself from responsibility for the agency's operations. *Smith v. New Jersey Transit Corp., supra; Blake v. Kline, supra; Urbano v. Board of Managers of·New Jersey State Prison,* 415 F.2d 247, 250–251 (3rd Cir.1969), *cert. denied,* 397 U.S. 948, 90 S.Ct. 967, 25 L.Ed.2d 129 (1970). *See Also: Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 401, 99 S.Ct. 1171, 1177–1178, 59 L.Ed.2d 401 (1979); *Port Authority Police Benevolent Association v. Port Authority of New York and New Jersey,* 819 F.2d 413, 414 (3rd Cir.1987), *cert. denied,* 484 U.S. 953, 108 S.Ct. 344, 98 L.Ed.2d 370 (1987). In close cases, evidence beyond the mere statutory language is required to determine the issue. *Smith v. New Jersey Transit Corp., supra,* at 889; *Blake v. Kline,* 612 F.2d at 726.

■ Regrettably, the issue of whether or not the Pennsylvania Turnpike Commission is an arm or alter ego of the Commonwealth of Pennsylvania is far from clear. It is noteworthy that of those state courts which have considered the question in recent years and found the commission to in fact be a "Commonwealth Party" have found it be such a party within the meaning of Pennsylvania's sovereign immunity statute, 42 Pa.C.S.A. § 8522. *See: Smith v. Mognet,* 152 Pa. Cmwlth. 302, 618 A.2d 1215 (1992); *Pennsylvania Turnpike Commission v. Jellig,* 128 Pa.Cmwlth. 171, 563 A.2d 202 (1989), *alloc. denied,* 525 Pa. 606, 575 A.2d 571 (1990) and *Bradley v. Pennsylvania Turnpike Commission,* 121 Pa.Cmwlth. 51, 550 A.2d 261 (1988). *See Also: Toombs v. Manning,* 835 F.2d 453 (3rd Cir.1987). There have, however, been several U.S. District Court opinions address-

ing the precise issue with which we are here presented and the Pennsylvania Supreme Court did address the question of whether or not the Turnpike Commission is cloaked with eleventh amendment immunity in *Specter v. Commonwealth of Pennsylvania,* 462 Pa. 474, 341 A.2d 481 (1975). Although those decisions pre-dated the 1974 and 1985 amendments to the Turnpike Organization, Extension and Toll Road Conversion Act, 36 P.S. § 651.1, *et seq.* and the *Specter* decision was issued by a plurality of the Court, careful analysis of the present Act's language suggests to this Court that those courts were correct in concluding that the Pennsylvania Turnpike Commission is *not* the alter ego of the Commonwealth of Pennsylvania as a matter of federal law and is not entitled to wear the cloak of eleventh amendment immunity from suits such as the one at bar. *See, e.g.: Litton RCS, Inc. v. Pennsylvania Turnpike Commission,* 376 F.Supp. 579 (E.D.Pa.1974), *aff'd,* 511 F.2d 1394 (3rd Cir.1975); *Sherman v. Ulmer,* 201 F.Supp. 660 (E.D.Pa.1961); *Linger v. Pennsylvania Turnpike Commission,* 158 F.Supp. 900 (D.Pa.1958). *See Also: Sarteschi v. Burlein,* 508 F.2d 110 (3rd Cir. 1975); *Pennsylvania Turnpike Commission v. County of Fulton,* 195 Pa.Super. 517, 171 A.2d 882 (1961).

The Pennsylvania Turnpike Commission was created and exists pursuant to 36 P.S. § 652d. Although the language of that statute does not address all of the above-referenced criteria, it does state that "the commission is ... constituted an instrumentality of the Commonwealth and the exercise by the commission of the powers conferred by this act in the construction, operation and maintenance of the turnpike shall be deemed and held to be an essential governmental function of the Commonwealth." In addition, "the commission ... consist[s] of five members ..., [and] the Secretary of Transportation shall be a member ex officio [but] may authorize the Deputy Secretary of Highway Administration to act in his place, including the power to vote on any issue. The four remaining members shall be appointed by the Governor by and with the advice and consent of two-thirds of the members of the Senate ..."

Section 652d goes on to state that "The commission shall make necessary rules and regulations for its own government and shall have the power to acquire, own, use, hire, lease, operate and dispose of personal property, real property and interests in real property, and to make and enter into all contracts and agreements necessary or incidental to the performance of its duties and the execution of its powers under this act ... All such compensation and salaries and all expenses incurred in carrying out the provisions of this act shall be paid solely from funds provided under the authority of this act, and no liability or obligation shall be incurred hereunder beyond the extent to which money shall have been provided under the authority of this act ..."

The commission's powers and duties are reiterated at 36 P.S. § 651.7(a); the gubernatorial appointment process for commission members is repeated at 36 P.S. § 651.5. Finally § 651.6 reaffirms that the exercise by the turnpike commission of the powers granted to it under the act constitute "an essential governmental function of the Commonwealth." In addition, § 651.7 further provides that the commission is authorized to:

(1) Maintain a principal office at such place as shall be designated by the commission.

(2) Contract and be contracted within its own name.

(3) Sue and be sued, in its own name, plead and be impleaded. Any and all actions at law or in equity against the commission shall be brought only in the courts in which such actions may be brought against the Commonwealth.

(4) Have an official seal.

(5) Make necessary rules and regulations for its own government.

(6) Acquire, hold, accept, own, use, hire, exchange, operate and dispose of personal property, real property and interests in real property, and to make and enter into all contracts and agreements necessary or incidental to the performance of its duties and the execution of its powers under this act, and to employ engineering, traffic, architectural and construction experts and inspectors, attorneys and other employees as may in its judgment be necessary and fix their compensation.

(7) Provide grade separations, at its own expense, with respect to all public roads, State highways and interstate highways intersected by the turnpikes and to change and adjust the lines and grades thereof so as to accommodate the same to the design for such grade separation. The damages incurred in changing and adjusting the lines and grades of public roads, State highways and interstate highways shall be ascertained and paid by the commission.... If the commission shall find it necessary to provide a grade separation or change the site of any portion of any interstate highway, State highway or public road or vacate the same, it shall cause to be reconstructed and restored forthwith, at the commission's own expense ...

(8) Petition the court of common pleas of the county wherein is situate any public road, or part thereof affected by the location therein of the turnpikes, for the evacuation, relocation, or supply of the same or any part thereof ...

What's more, under 36 P.S. § 651.15, "... the commission shall not be required to pay any taxes or assessments on any property acquired or used by it for the purposes provided in this act, and the bonds, notes or other obligations issued by the commission, their transfer and the income therefrom, including any profits made on the sale thereof, shall at all times be free from taxation within the Commonwealth." Finally, as is reflected by 36 P.S. §§ 651.2, 651.4, 651.12, 651.13, and 651.16, the turnpike commission and all of its authorized activities are to be funded and paid for from the tolls and revenues which the commission raises from the issuance and sale of bonds and notes and, as § 651.4 makes clear, the obligations, debts, etc. of the turnpike commission are *not* to be deemed a debt of or a pledge of the faith and credit of the Commonwealth of Pennsylvania. Thus, while the Pennsylvania legislature deems the commission an instrumentality of the Commonwealth and considers the activities of the commission to be essential governmental functions and the Governor is responsible for appointing the members of the Commission,

it is nevertheless clear that in all other respects the turnpike commission functions independently of state interference. Accordingly, and inasmuch as the present language of the Turnpike Commission Act is substantially identical to the language of the Act analyzed by the Pennsylvania Supreme Court in *Specter*, we see no reason to now depart from its rationale. We therefore conclude that the Pennsylvania Turnpike Commission is not, as a matter of federal law, a part of the Commonwealth of Pennsylvania and that it is not immune from this lawsuit under the Eleventh Amendment.

### C. The Individual Defendants' Immunity From Suit Under the Doctrine of Qualified Immunity

The individual defendants, Brady, Boschi, Greco and Stewart next assert that they are entitled to the entry of judgment in their favor as a matter of law inasmuch as they are qualifiedly immune from suit.

■ It is axiomatic that qualified or "good faith" immunity is an affirmative defense that must be pleaded by a defendant official. *Harlow v. Fitzgerald*, 457 U.S. 800, 815, 102 S.Ct. 2727, 2736, 73 L.Ed.2d 396 (1982) citing *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). The general rule of qualified immunity is intended to provide government officials with the ability to reasonably anticipate when their conduct may give rise to liability for damages and, where applicable, officials can know that they will not be held personally liable as long as their actions are reasonable in light of current American law. *Anderson v. Creighton*, 483 U.S. 635, 646, 107 S.Ct. 3034, 3042, 97 L.Ed.2d 523 (1987). Qualified immunity may thus be properly invoked to protect governmental officials performing discretionary functions to the extent that their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818, 102 S.Ct. at 2738; *Winn v. Lynn*, 941 F.2d 236, 239 (3rd Cir.1991). *See Also: Mitchell v. Forsyth*, 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.Ed.2d 411 (1985). Clearly established rights are those with contours sufficiently clear that a reasonable offi-

cial would understand that what he is doing violates those rights. Hence, while a plaintiff need not show that the very action in question has previously been held unlawful, he needs to show that in light of preexisting law, the unlawfulness was apparent. *Shea v. Smith*, 966 F.2d 127, 130 (3rd Cir.1992) citing *Anderson v. Creighton, supra*, 483 U.S. at 639–640, 107 S.Ct. at 3039.

■ For purposes of determining whether a right is clearly established, the court must look to the status of the law at the time of the challenged actions. *Burns v. County of Cambria*, 971 F.2d 1015, 1024 (3rd Cir. 1992), *cert. denied*, ── U.S. ──, 113 S.Ct. 1049, 122 L.Ed.2d 357 (1993). Naturally, a necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is "clearly established" at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all. *Siegert v. Gilley*, 500 U.S. 226, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991); *D.R. By L.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364, 1368 (3rd Cir.1992), *cert. denied*, ── U.S. ──, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993).

■ Here, the essential thrust of the plaintiff's case is that his first amendment rights to free speech and free association were violated by the defendants by their failure to promote him for purportedly unlawful partisan political reasons. It is therefore fairly obvious that Mr. Christy is indeed asserting the violation of a constitutional right.

■ Moreover, and as discussed below, it has long been established that conditioning hiring decisions on political belief and association plainly constitutes an unconstitutional condition unless it can be shown that party affiliation is an acceptable criterion for some type of government employment or that an employee's private political beliefs would interfere with the discharge of his public duties. In that event, an employee's First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency. *Branti v. Finkel*, 445 U.S. 507, 516–517,

100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 362–363, 96 S.Ct. 2673, 2684, 49 L.Ed.2d 547 (1976). In 1990, in deciding *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 78–79, 110 S.Ct. 2729, 2739, 111 L.Ed.2d 52 (1990), the U.S. Supreme Court extended this rationale to apply with equal force to promotional decisions thereby prohibiting partisan or political considerations from having any influence in the promotional process. Again, it is clear that this was the prevailing state of the law in 1992 and 1993 when the employment decisions at issue in this case were made.

■ Furthermore, it is evident from the Turnpike Commission's Policy Letter (attached as Exhibit 21 to the plaintiff's response to the instant motions) and from the deposition testimony of John Boschi (at page 25), Vincent Greco (at pages 25–26) and John Stewart (at pages 37–41), that the defendants, like all others involved in the promotion process, had been specifically apprised of the Supreme Court's holding in *Rutan.* Inasmuch as our review of the record in this case reveals and Messrs. Boschi, Greco and Stewart admit that they were responsible for interviewing, assessing and "grading" candidates for the position(s) for which Mr. Christy applied, and that Mr. Brady, together with his fellow commission members, voted to approve the appointment of Sean Pilecki, it is clear that defendants were all involved in the promotions process in this case. Accordingly, viewing all of the evidence in this matter in light of the foregoing precedent and in the manner most favorable to the plaintiff, we are unable to find as a matter of law that these defendants did not violate Mr. Christy's clearly established rights or that they are entitled to the cloak of qualified immunity from this suit. The motions for summary judgment on the basis of qualified immunity from suit must therefore be denied.

D. *Sufficiency of the Evidence of Record to Demonstrate a Violation of Plaintiff's First Amendment Rights*

Defendants next assert that the plaintiff simply cannot prove that his First Amendment rights were violated so as to entitle him to the recovery of monetary damages under 42 U.S.C. § 1983. Again, we disagree.

■ It is well-settled that the freedom to associate with others for the common advancement of political beliefs and ideas is a form of orderly group activity protected by the First and Fourteenth Amendments and that conditioning hiring, firing and promotional decisions on political belief and association plainly constitute an unconstitutional infringement of this right which is actionable under the federal civil rights acts. *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 76–79, 110 S.Ct. 2729, 2738–2739, 111 L.Ed.2d 52 (1990); *Elrod v. Burns,* 427 U.S. 347, 357, 96 S.Ct. 2673, 2681, 49 L.Ed.2d 547 (1976).

These individual rights, however, are not absolute and restraints will therefore be permitted for appropriate reasons. *Id.,* 427 U.S. at 359–361, 96 S.Ct. at 2683. Thus, if an employee's private political beliefs would interfere with the discharge of his public duties, his First Amendment rights may be required to yield to the State's vital interest in maintaining governmental effectiveness and efficiency. *Branti v. Finkel,* 445 U.S. 507, 517, 100 S.Ct. 1287, 1294, 63 L.Ed.2d 574 (1980), citing *Elrod,* 427 U.S. at 366, 96 S.Ct. at 2686. In this regard, the courts have held that "a nonpolicymaking, nonconfidential government employee" cannot be discharged on the sole ground of his or her political beliefs but that an employee who "acts as an advisor or formulates plans for the implementation of broad goals" may be discharged upon a proper showing. *Zold v. Township of Mantua,* 935 F.2d 633, 635 (3rd Cir.1991) citing *Elrod,* 427 U.S. at 367–368, 375, 96 S.Ct. at 2686–2687, 2690; *Brown v. Trench,* 787 F.2d 167, 168 (3rd Cir.1986).

Of course, it is not always easy to determine whether political affiliation is a legitimate factor to be considered for a particular job and each decision is naturally fact specific for that case. *Zold,* at 635, citing, *inter alia, Ness v. Marshall,* 660 F.2d 517, 522 (3rd Cir.1981). Although it has been held that in constitutional terms, freedom of association is not to be defined unreservedly and hence entry into the constitutional orbit requires more than a mere relationship, protected po-

litical beliefs and associations are not confined to partisan beliefs and associations. *Boger v. Wayne County,* 950 F.2d 316, 323 (6th Cir.1991); *Correa–Martinez v. Arrilla-ga–Belendez,* 903 F.2d 49, 57 (1st Cir.1990). Indeed, "political affiliation" has been held to apply to political differences of any kind, not merely differences in party membership. *Boger,* at 323. Regardless of the type of association involved, however, all employees who claim that adverse employment action was taken against them based upon the exercise of their associational rights must show that they were engaged in constitutionally protected conduct and that that conduct was a substantial or motivating factor in the government employer's decision. *Rode v. Dellarciprete,* 845 F.2d 1195, 1204 (3rd Cir.1988); *Asko v. Bartle,* 762 F.Supp. 1229, 1231 (E.D.Pa.1991), both citing *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977).

Viewing the record in the instant case in light of the above-referenced principles, we observe at the outset that at the time Charles Christy applied for the paint crew foreman position, he had been employed by the Pennsylvania Turnpike Commission for sixteen and one-half years in various positions. At that time and apparently at the present time, Mr. Christy was and is employed as an auto mechanic at the Commission's Devault facility. There is no evidence whatsoever on this record, however, which would suggest that Mr. Christy is presently a confidential, policymaking employee or that the paint crew foreman position was such as would necessitate political loyalty or affiliation to be performed in an effective manner. Consequently, we can reach no other conclusion but that the Turnpike Commission has no overriding interest such as would justify the encroachment of Mr. Christy's First Amendment right to free association.

We next evaluate whether the record evidence demonstrates that Plaintiff was engaged in constitutionally protected conduct and whether that conduct was a substantial or motivating factor in the Commission's decision to promote another candidate. Again viewing the record in the light most favor-able to the plaintiff, the testimony and affidavits of Mr. Christy himself, the affidavit and deposition of James Sperduti and the deposition testimony of John Boschi reflect that while the plaintiff had been active in Democratic party politics in Chester County, the only way he could get a promotion with the Commission was by aligning himself with defendant Robert Brady and Philadelphia County Democratic State Senator Vincent Fumo and pressuring those individuals to promote or create a higher, better paying position for him. This evidence is sufficient indicia that Mr. Christy was engaged in exercising his first amendment right to not associate or align himself with Mr. Brady and/or Senator Fumo and that his decision to not so associate or align himself with those individuals was a substantial or motivating factor in the Commission's decision to instead promote Sean Pilecki who, along with his father, was apparently so aligned. Inasmuch as we see no difference between refusing to promote someone on the basis of who he associates with and refusing to promote someone on the basis of who he chooses not to associate with, it is the opinion of this Court that there is enough evidence in this record of a violation of Plaintiff's constitutional rights to enable this case to go to a jury.

In so holding, we further find from the affidavits and deposition testimony of defendants Brady, Boschi, Greco and Stewart and both Louis and James Sperduti that adequate evidence exists that each of the individual defendants were influentially involved in the interviewing and evaluation processes and in the making of the final employment decision being challenged in this case. To be sure, as Boschi, Stewart and Greco themselves testified, they were responsible for interviewing and evaluating the candidates. In this case, it appears that the questions asked during the interviewing process and the evaluating criteria may not have been the same for all of the candidates and that the interview evaluation forms may have been somewhat skewed as a result. (See, e.g.: excerpts from Depositions of Charles Christy, John Boschi, Louis Sperduti, James Sperduti and Sean Pilecki.)

For all of the reasons enumerated above, the defendants' motions for summary judgment are denied in accordance with the attached order.