additional proceedings and orders in conformity with this opinion as may be necessary.

648 A.2d 1166

KATHLEEN R. WEISEL, PLAINTIFF, v. LONNA R. HOOKS, INDIVIDUALLY AND AS SECRETARY OF STATE, DEPT. OF STATE, STATE OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Chancery Division Mercer County
General Equity Part

Decided July 5, 1994.

*Stephen M. Holden* and *Jeffrey D. Light* for plaintiff (*Holden & Light,* attorneys).

*Pamela B. Katten,* Deputy Attorney General, for defendant (*Deborah T. Poritz,* Attorney General of New Jersey, attorney; *Jerry Fisher,* Assistant Attorney General, of counsel and *Michael S. Bokar,* Senior Deputy Attorney General, *June K. Forrest,* Senior Deputy Attorney General and *Pamela B. Katten* on the brief).

CARCHMAN, P.J.Ch.

Plaintiff, Kathleen R. Weisel, (plaintiff) served as the "Confidential Secretary," an unclassified position, to then Secretary of State

Daniel Dalton during the administration of Governor James Florio. (Plaintiff's title was later administratively changed to "secretary to the Commissioner," but her duties and job description remained the same. For ease of reference, the title will be referred to as confidential secretary.) After the 1993 gubernatorial election, Governor Christine Todd Whitman, appointed defendant, Lonna R. Hooks (defendant) as Secretary of State. A few months after her appointment, defendant and the newly-appointed Assistant Secretary of State, Lathea Morris (Morris) dismissed plaintiff from her position as confidential secretary. Plaintiff alleges that her dismissal was based solely on political considerations and violates her federal and state constitutional rights of belief and association. She brings this action pursuant to 42 *U.S.C.A.* § 1983 and N.J. Const. art. I, par. 5. This court holds that in her position as confidential secretary to the Secretary of State, plaintiff has no protected constitutional rights which preclude her dismissal for "political reasons."

## I.

The facts of this case are not complex. Plaintiff served as confidential secretary to Secretary of State Daniel J. Dalton. The unclassified title of "confidential secretary" offers plaintiff no civil service protection and allows her dismissal "at-will." *N.J.S.A.* 11A:3–4h. Prior to assuming the position of confidential secretary, plaintiff served as Dalton's administrative assistant and at other times served as secretary to various presidents of the New Jersey State Senate. All of these prior employment positions were for office holders who were members of the Democratic Party. In addition, at various times in her career, plaintiff was actively engaged in Democratic Party affairs.

With the change in administration from Governor Florio to Governor Whitman, a new Secretary of State, defendant, was appointed. According to plaintiff, defendant retained plaintiff as her confidential secretary from January 20, 1994, until March 8, 1994, when defendant appointed Debora Banks to the plaintiff's

position; thereafter, plaintiff served as confidential secretary to Morris. On March 21, 1994, Morris advised plaintiff that plaintiff was terminated. Morris filled the position by appointing Julia Seymore as her executive assistant. Plaintiff alleges that on February 25, 1994, defendant said to plaintiff, "Quite frankly I'm tired of having to explain having a Democrat work for me as my assistant." Plaintiff also alleges that Morris, upon notifying plaintiff of her dismissal, said "We can't keep you employed here .... because of politics." On May 20, 1994, plaintiff's employ with both defendant and Morris terminated. Ironically, both of plaintiff's replacements, Ms. Banks and Ms. Seymore, are registered Democrats.

The Department of Personnel job specification for the position of "confidential secretary" describes the position as being under the Secretary of State's direction and includes the following duties:

1. performs a liaison function between the Department of State and other State agencies and professional organizations on issues and programs concerning the Department;

2. prepares correspondence that may or may not require the Secretary of State's review or signature;

3. takes and transcribes dictation, including correspondence, reports and recommendations of a confidential nature;

4. prepares information for reports, speeches and memoranda;

5. maintains confidential, personal, correspondence follow-up and other records and files;

6. when required, instructs and supervises office personnel in accomplishment and duties and develops knowledge of Department programs, policies, procedures and functions;

7. greets dignitaries and other persons coming to the Secretary of State's office;

8. when required, coordinates tours and explains the Secretary's duties to school children and special interest groups.

As previously noted, during the course of his tenure as Secretary of State, Dalton secured a title change from "confidential secretary" to "secretary to the commissioner," but the duties remained the same.

Plaintiff commenced this action by filing a complaint and Order to Show Cause why temporary restraints should not be

granted restraining defendant from terminating plaintiff from her position as confidential secretary pending a final hearing. Plaintiff argued that she was terminated because of her political affiliation in violation of the federal and state constitutions. Defendant denied the truth of the allegations regarding plaintiff's dismissal and also argued that the position of confidential secretary is not one afforded constitutional protection. Plaintiff's application for temporary relief was denied, and the matter was scheduled for trial on an expedited basis. On the trial date, defendant moved for summary judgment. Since this matter is before the court pursuant to a motion for summary judgment, all facts alleged by plaintiff must be accepted as true and plaintiff is entitled to all favorable inferences from such facts. *Judson v. Peoples Bank and Trust Co. of Westfield*, 17 *N.J.* 67, 74–75, 110 *A.*2d 24 (1954).

## II.

The threshold issue is whether plaintiff, in her position as confidential secretary, has a protected constitutional right of belief and association. In *Elrod v. Burns*, 427 *U.S.* 347, 96 *S.Ct.* 2673, 49 *L.Ed.*2d 547 (1976) and *Branti v. Finkel*, 445 *U.S.* 507, 100 *S.Ct.* 1287, 63 *L.Ed.*2d 574 (1980) (the "Elrod–Branti test"), the United States Supreme Court held that the dismissal of certain public employees solely because of their partisan political affiliation infringes upon their First Amendment rights of belief and association. A "nonpolicymaking, nonconfidential government employee" cannot be discharged on the sole ground of his or her political beliefs. *Elrod, supra,* 427 *U.S.* at 375, 96 *S.Ct.* at 2690, 49 *L.Ed.*2d at 566 (Stewart, J., concurring). Conversely, "if an employee's private political beliefs would interfere with the discharge of his public duties, [her] First Amendment rights may be required to yield to the State's vital interests in maintaining governmental effectiveness and efficiency." *Branti, supra,* 445 *U.S.* at 517, 100 *S.Ct.* at 1294, 63 *L.Ed.*2d at 583. The Elrod–Branti test has been adopted by the New Jersey Supreme Court

in *Battaglia v. Union County Welfare Bd.*, 88 *N.J.* 48, 438 *A.*2d 530 (1981), *cert. denied* 456 *U.S.* 965, 102 *S.Ct.* 2045, 72 *L.Ed.*2d 490 (1982).

In *Branti*, the Court found that it was unconstitutional to discharge two assistant public defenders who were performing their jobs satisfactorily solely because of their political party affiliation. In so holding the Court stated that "the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved." *Branti, supra,* 445 *U.S.* at 518, 100 *S.Ct.* at 1295, 63 *L.Ed.*2d at 584. In contrast to the public defenders, the Court offered an "obvious" example of where party affiliation would be an appropriate requirement. The Court proffered that if a state's election laws required that precincts be supervised by two election judges of different parties, a Republican judge could legitimately be discharged solely for changing his party registration. *Branti, supra,* 445 *U.S.* at 518, 100 *S.Ct.* at 1294, 63 *L.Ed.*2d at 584.

█ A second justification offered in *Elrod* for the government's legitimate consideration of an employee's First Amendment rights of belief and association is political loyalty. *Elrod, supra,* 427 *U.S.* at 367, 96 *S.Ct.* at 2687, 49 *L.Ed.*2d at 562. The "political loyalty" justification is limited to policymaking positions, however, "[n]o clear line can be drawn between policymaking and non-policymaking positions ... the nature of the responsibilities is critical." *Ibid.*

█ The "[political loyalty] justification is a matter of proof or at least argument, directed at particular kinds of jobs." *Elrod, supra,* 427 *U.S.* at 368, 96 *S.Ct.* at 2687, 49 *L.Ed.*2d at 562 (citations omitted). Although it is the government's burden to demonstrate an overriding interest in order to validate an encroachment on protected interests, such an overriding interest can be established through the "inherent" powers of the job classification rather than by the job as actually performed. *See Collazo*

*Rivera v. Torres Gaztambide,* 812 *F.*2d 258, 261 (1st Cir.1987) (citing *de Abadia v. Izquierdo Mora,* 792 *F.*2d 1187, 1192 (1st Cir.1986)).

■ When available, an official document setting forth an authoritative list of the position's inherent powers and duties provides an invaluable aid in determining whether the employee holding that position is entitled to constitutional protection against politically motivated dismissal. *Rosario Nevarez v. Torres Gaztambide,* 820 *F.*2d 525, 528 n. 8 (1st Cir.1987) (citing *Mendez–Palou v. Rohena–Betancourt,* 813 *F.*2d 1255, 1260 (1st Cir.1987)); *See also Zold v. Twp. Of Mantua,* 935 *F.*2d 633, 638 (3rd Cir.1991) (the responsibilities of a municipal clerk must be analyzed in light of statutory revisions designed to make position non-political).

The First Circuit is particularly instructive on the question of whether the position of "secretary" to one who is an undisputed policymaker is protected by the First Amendment while the policymaker is not. In upholding the dismissal of the executive secretary of the Commonwealth Ports Authority of Puerto Rico for "political" reasons, the court in *Alamo Hernandez v. Hernandez,* 664 *F.Supp.* 646, 648 (D.P.R.1987) applied the Elrod–Branti test which excludes from First Amendment protection a "confidential, policymaker" in the disjunctive, stating:

[T]he focus ... [should be] not only on whether plaintiff's former job can be 'measured solely by strictly technical or professional criteria' which would make the job nonpartisan in nature; but also whether plaintiff's position, being 'confidential' rather than 'policymaker,' put her in the unprotected ambit of 'public employees who occupy positions of such unusually intimate propinquity relative to government leaders that, despite their non-involvement with partisanship and policymaking, political loyalty could be deemed an appropriate requirement of the job for purposes of muzzling the *Elrod–Branti* watchdog.'

[*Ibid.* (citations omitted) (quoting *Vazquez Rios v. Hernandez Colon,* 819 *F.*2d 319, 324 (1st Cir.1987)); *Accord Faughender v. City of North Olmstead,* 927 *F.*2d 909, 914 (6th Cir.1991) ("political action cannot occur without communication, a position that controls the lines of communication of a political actor must be inherently political").]

■ Plaintiff argues that she was succeeded in both her job as confidential secretary to defendant and to Morris by Democrats. She concludes, therefore, that party affiliation is not a necessary

or appropriate requirement for consideration for the position of confidential secretary. However, especially in the context of confidential relationships, any reference to political party or political loyalty need not be read as synonymous with partisan political motivations. The reasoning of the Supreme Court in *Branti* has been understood to apply to political differences of any kind including personal incompatibility, not merely differences in party membership. *See Williams v. City Of River Rouge,* 909 *F.*2d 151 (6th Cir.1990) (upholding dismissal of city attorney for political *and* personal incompatibility with mayor). Indeed, in *Battaglia, supra,* the dispute was an *intra-party* dispute among members of the same political party rather than one involving opposing political parties. "Political affiliation may serve as a proxy for trustworthiness in certain circumstances, but the reverse cannot be true." *Vazquez Rios, supra,* 819 *F.*2d at 325. The inherent powers of the job classification of confidential secretary to the Secretary of State (and to the Assistant Secretary of State) are such that trustworthiness and more generally "confidence," regardless of nominal party affiliation, are legitimate job criterion which cannot be scrutinized under the First Amendment and for which there is an overriding governmental interest.

### III.

A confidential secretary is privy to the most critical policy-making decisions and has access and exposure to the policymakers as well. It is a position of trust. Those charged with the responsibility of making policy for what they perceive to be the public good cannot have their attention diverted by even a suggestion that those in whom they confide, either directly or indirectly, are not committed to the same view or vision. While this case implicates significant constitutional principles, it resolves itself as a matter of common sense. By assuming a position of confidence such as the secretary to a high-level cabinet officer, an individual assumes a degree of knowledge and access which limits his or her ability to associate freely and without restriction even though such

conduct might otherwise be protected by the Federal or State Constitutions.

The job specifications for the position of "confidential secretary" to the Secretary of State (and to the Assistant Secretary of State) confirms that its inherent duties are similar to those of the unprotected "confidential" position of secretary to the mayor in *City of North Olmstead, supra,* whose inherent duties were summarized as follows: "[The] mayor's secretary must undertake those functions in relation to the flow of information, whether by writing, speech, or personal visit, to and from the mayor's office, that the mayor wants the secretary to perform." 927 *F.*2d at 913–914. An office holder may legitimately compel the loyalty and commitment necessary for the office holder to effectively fulfill his or her responsibilities. Plaintiff's position is not protected by the federal or state constitutions as a matter of law.

Judgment for defendant. The complaint is dismissed.